[No. 57275-5. En Banc. November 7, 1991.]

*In the Matter of the Personal Restraint of*
MARQUIS ECKMANN, *Petitioner.*

*In the Matter of the Personal Restraint of*
DARRYL KEITH BLYE, *Petitioner.*

*In the Matter of the Personal Restraint of*
THEMAR E. SERR, *Petitioner.*

*In the Matter of the Personal Restraint of*
LESTER CARL CHATMAN, *Petitioner.*

*Marquis Eckmann, Darryl Keith Blye,* and *Themar E. Serr,* pro se; *John B. Midgley, Patricia J. Arthur,* and *Robert A. Stalker, Jr.,* of *Evergreen Legal Services,* for petitioner Chatman.

*Kenneth O. Eikenberry, Attorney General,* and *Thornton Wilson, Assistant,* for respondent.

SMITH, J. — The personal restraint petitions of Marquis Eckmann, Darryl Keith Blye, Themar E. Serr and Lester Carl Chatman have been consolidated for hearing in this matter. Each having previously been adjudged a "habitual criminal", they seek review of decisions of the Indeterminate Sentence Review Board relating to their mandatory minimum terms under Substitute House Bill (SHB) 1457, 51st Legislature (1989),[1] which requires decisions of the Board to be "reasonably consistent with the ranges, standards, and purposes of the sentencing reform act".[2] Petitioners additionally assert that adequate written reasons are required by RCW 9.95.009 if a minimum term is a departure from the Sentencing Reform Act of 1981 (SRA) ranges.

In affidavits submitted in each of the four petitions, Chairperson Kathryn S. Bail of the Indeterminate Sentence Review Board (Board) stated that:

> Under the recent statutory change, the review first focussed [*sic*] on the individual's demonstrated efforts at rehabilitation. In addition to the factors listed in RCW

---

[1] Now codified as RCW 9.95.013.

[2] The Sentencing Reform Act of 1981 is codified in RCW 9.94A.

9.95.013, the Board also reviewed the habitual criminal's institution history, and took special note of prison infractions, disciplinary findings and progress reports. Based on this overall review, the Board did not waive the mandatory term unless the habitual criminal had demonstrated meritorious efforts at rehabilitation. If meritorious rehabilitation was sufficient to waive the mandatory, the Board's next action was to set a minimum term at less than the fifteen (15) year mandatory minimum term.[3]

We conclude that the Indeterminate Sentence Review Board fully complied with requirements of the statute. We therefore uphold its decision in each case.

## ISSUES PRESENTED

Only two issues are presented by these cases. They can be simply stated.

*The first issue* is whether the Indeterminate Sentence Review Board in issuing its decision in each case supplied adequate written reasons for not waiving a mandatory minimum term.

*The second issue* is whether SHB 1457 requires the Indeterminate Sentence Review Board to set a minimum term within the Sentencing Reform Act of 1981 ranges if adequate reasons are not given for exceeding those ranges.

## RECORDS OF INDIVIDUAL PETITIONERS
### 1. Marquis Eckmann

In 1971, Marquis Eckmann was convicted of grand larceny in the King County Superior Court.[4] Subsequently he was placed on probation.[5] In December 1971, he was convicted of assault in connection with a shooting.[6] Again he was placed on probation.[7] In July 1975, he committed a

---

[3]Affidavit of Kathryn S. Bail, Chairperson of the Indeterminate Sentence Review Board.

[4]Judgment and Sentence (June 17, 1971).

[5]Judgment and Sentence (June 17, 1971).

[6]Warrant of Commitment to Washington Corrections Center (Nov. 10, 1975).

[7]Warrant of Commitment to Washington Corrections Center (Nov. 10, 1975).

burglary.[8] He was jailed after his arrest, but was released later. After his release, he committed another burglary and grand larceny.[9] He was convicted of the first burglary.[10] Upon sentencing, the prosecutor dismissed the second burglary and the grand larceny charges.[11] As a result of the conviction for the first burglary, Mr. Eckmann was sentenced to prison.[12] His probation for the grand larceny and assault convictions was revoked. Prior to his adult convictions, Mr. Eckmann had committed three burglaries as a juvenile.[13]

In July 1977, Petitioner Eckmann was paroled.[14] In March 1978, he committed another burglary and violated his parole when he used drugs.[15] At that time, he admitted that he had a serious drug problem.[16] In 1978, he was convicted of the March burglary. He was found to be a *habitual criminal* and given a maximum sentence of life imprisonment.[17] The sentence was suspended to give him a "last chance" at avoiding crime.[18] In September 1980, he was convicted of burglary and sentenced to life imprison-

---

[8]Statement of Prosecuting Attorney and Sentencing Judge (Nov. 10, 1975).

[9]Statement of Prosecuting Attorney and Sentencing Judge (Nov. 10, 1975).

[10]Judgment and Sentence in the Superior Court of Washington for King County (Nov. 10, 1975).

[11]Statement of Prosecuting Attorney and Sentencing Judge (Nov. 10, 1975.)

[12]Statement of Prosecuting Attorney and Sentencing Judge (Nov. 10, 1975).

[13]Statement of Prosecuting Attorney and Sentencing Judge (Nov. 10, 1975).

[14]Order of Parole and Conditions (July 11, 1977).

[15]Adult Probation and Parole Violation (Mar. 23, 1978).

[16]Adult Probation and Parole Violation (Mar. 23, 1978).

[17]Adult Probation and Parole Violation (Mar. 23, 1978).

[18]Adult Probation and Parole Violation (Mar. 23, 1978).

ment.[19] His suspended sentence was revoked, and he was sentenced to prison as a habitual criminal.[20]

Upon his incarceration, the Board set Mr. Eckmann's minimum term at the mandatory 180 months.[21] During incarceration, he had several infractions, including use of drugs and alcohol.[22]

After passage of SHB 1457, the Board considered waiver of Mr. Eckmann's mandatory minimum term. It received comments from the Department of Corrections[23] and Mr. Eckmann.[24] Additionally, the Board received an updated minimum term recommendation from the King County Prosecuting Attorney, who opposed waiver of the mandatory minimum term.[25] In October 1989 the Board declined to waive the mandatory minimum term.[26]

In stating its reasons for denying waiver of the mandatory minimum term for Mr. Eckmann, the Board noted his criminal history.[27] Additionally, the Board stated:

> We note that there is a 1988 Department of Corrections recommendation against the waiver of the mandatory. We

---

[19]Judgment and Sentence (Sept. 4, 1980).

[20]Warrant of Commitment (Sept. 16, 1980).

[21]Indeterminate Sentence Review Board Decisions and Reasons (Aug. 27, 1987).

[22]Classification Referral/Progress Report (Jan. 12, 1987); Classification Referral/Progress Report (Dec. 14, 1987); Classification Referral (Nov. 27, 1989).

[23]Classification Referral (Nov. 27, 1989).

[24]Information Submitted by Inmate for Administrative Progress Review (Oct. 4, 1989).

[25]Letter from King County Prosecuting Attorney to Dennis Marsh (July 21, 1989).

[26]Indeterminate Sentence Review Board Decisions and Reasons (Oct. 11, 1989).

[27]Indeterminate Sentence Review Board Decisions and Reasons (Oct. 11, 1989).

would also note that recent reports indicate that Mr. Eckmann's institutional conduct has improved, that overall he has displayed a good attitude and been cooperative towards institutional programs. The most recent classification and referral report dated 12-88 to 6-89 indicates that he was infraction free during that period, however he did receive an infraction in 7-89. In conclusion, after a thorough review of both Mr. Eckmann's file and criminal history, the Board has determined that due to the nature and the extent of Mr. Eckmann's criminal history and criminal convictions a waiver of the mandatory on the habitual criminal status is not indicated in this case.[28]

In Petitioner Eckmann's case, the Board considered the updated recommendation of the prosecuting attorney and the Department of Corrections. The Board reviewed the nature and extent of his criminal history, and concluded that a waiver of the mandatory minimum term was not indicated. Petitioner Eckmann was found to be a habitual criminal under RCW 9.92.090 and was punished by imprisonment in the state penitentiary for life. His minimum term of confinement was set at 180 months consistent with RCW 9.95.040(3). The Board declined to waive the mandatory minimum sentence and set forth adequate written reasons in its decision. It cannot be said that a reasonable person would not take the position adopted by the Board. The Board did not abuse its discretion.

### 2. Darryl Keith Blye

On February 17, 1976, Darryl Keith Blye pleaded "guilty" to charges of grand larceny and second degree burglary in the Kitsap County Superior Court. He received a maximum sentence of 15 years for count 1, grand larceny, and 15 years for count 2, second degree burglary, the sentences to run concurrently.[29] On October 30, 1981, he was found guilty of second degree assault while armed with a deadly weapon. He was adjudged to be a *habitual criminal*.

---

[28]Indeterminate Sentence Review Board Decisions and Reasons (Oct. 11, 1989).

[29]Judgment and Sentence (Plea of Guilty) in the Superior Court of Washington for Kitsap County (Feb. 17, 1976).

Judge James I. Maddock sentenced him to a maximum term of life imprisonment and ordered him to serve a mandatory minimum sentence of 7½ years.[30]

On October 11, 1989, the Indeterminate Sentence Review Board reviewed the mandatory minimum term for a habitual criminal and considered Petitioner Blye's crimes, the sentencing reform act ranges, the judge's and prosecutor's recommendations and pre-sentencing reform act charging practices. The Board also considered Mr. Blye's conduct in prison and on parole.

The prosecutor's statement includes references to Petitioner Blye's juvenile offenses, including several burglaries, forgery, possession of stolen property, possession of narcotics paraphernalia, possession of a firearm and grand larceny.[31] During plea bargaining on the grand larceny and burglary charges, petitioner admitted that he committed six other burglaries and six other larcenies.[32] The prosecutor recommended that petitioner serve a minimum term of 10 years.[33]

The presentence report for the 1975 and 1976 larceny convictions indicates that Petitioner Blye had a drug problem involving use of marijuana, cocaine and injecting "speed".[34] As a result of petitioner's Kitsap County conviction, the Pierce County Superior Court revoked his probation on the 1975 grand larceny conviction.[35]

---

[30]Judgment and Sentence and Warrant of Commitment in the Superior Court of Washington for Kitsap County (Oct. 30, 1981).

[31]Statement of Trial Judge and Prosecuting Attorney (Feb. 27, 1976).

[32]Statement of Trial Judge and Prosecuting Attorney (Feb. 27, 1976).

[33]Statement of Trial Judge and Prosecuting Attorney (Feb. 27, 1976).

[34]Presentence Reports (Nov. 10, 1975 and Mar. 3, 1976).

[35]Judgment and Sentence and Warrant of Commitment (Oct. 30, 1981).

In May 1980, Petitioner Blye was paroled.[36] In December 1980, he was charged with violating his parole when he committed the crimes of assault, possession of a firearm and theft, and was found to have consumed alcohol, as well as several other "technical" parole violations.[37] In February 1981, he was charged with four violations involving possession and sale of heroin.[38] On October 30, 1981, he was adjudged to be a *habitual criminal* and sentenced to life imprisonment.[39] On February 22, 1982, he was convicted of second degree assault. In a formal statement, the prosecutor recommended that he serve 30 years and the judge recommended that he serve the "statutory year minimum" term.[40]

Since his incarceration in 1986, Mr. Blye has had numerous infractions.[41] In November 1986, he had 10 major infractions, 4 of which were related to substance abuse.[42] In February 1987, he received a notice of infraction for smoking a controlled substance.[43] In April 1987, he again received an infraction for smoking marijuana.[44] In October 1987, he was given an infraction because his urinalysis tested positive for cannabinoids.[45] In January

---

[36]Order of Parole and Conditions (Apr. 29, 1980).

[37]Adult Probation and Parole Violation (Dec. 16, 1980).

[38]Adult Probation and Parole Supplemental Violation (Feb. 6, 1981).

[39]Judgment and Sentence, Superior Court of Washington for Kitsap County (Oct. 30, 1981). Adult Probation and Parole Supplemental Violation.

[40]Statement of Prosecuting Attorney.

[41]Classification Referral/Progress Report (Nov. 20, 1986).

[42]Classification Referral/Progress Report (Nov. 20, 1986).

[43]Classification Referral/Progress Report (Mar. 11, 1987).

[44]Memorandum, Disciplinary Hearing Appeal (May 4, 1987).

[45]Memorandum (Oct. 19, 1987).

and February 1988, Petitioner Blye received two more drug-related infractions.[46] Afterward, the Department of Corrections placed him in administrative segregation on suspicion of drug trafficking.[47]

In April 1988, Petitioner Blye's urinalysis tested positive for cannabinoids and opiates.[48] In July 1988, he received another drug-related infraction.[49] In September 1988, he was given an infraction for refusing a search.[50] At that time, the Department of Corrections warned him that if he was to be considered for release, he would be expected to "remain infraction free, cooperate with staff, abide by the rules and regulations of the institution and participate in all available programming."[51] In spite of the warning, he continued to violate prison rules. On May 1, 1989, he received infractions for theft, destroying state property and interfering with staff.[52] In September 1989, he received another major infraction.[53]

In October 1989, the Board reviewed Petitioner Blye's habitual criminal mandatory minimum term pursuant to RCW 9.95.013. The Board considered the reports of his institutional conduct and the number and nature of his crimes, and declined to waive his mandatory minimum term.[54]

---

[46]Classification Referral (Apr. 15, 1986).

[47]Classification Referral (Apr. 15, 1986).

[48]Memorandum (Apr. 12, 1988).

[49]Infraction Report (July 16, 1988).

[50]Classification Referral/Administrative Segregation (Oct. 10, 1988).

[51]Classification Referral/Administrative Segregation (Oct. 10, 1988).

[52]Classification Referral (May 1, 1989).

[53]Classification Referral (Sept. 5, 1989).

[54]Indeterminate Sentence Review Board Decisions and Reasons (Oct. 11, 1989).

The Board noted in its written decision the following:

 Pursuant to Substitute House Bill 1457 the case of Darryl
 K. Blye 247868 has been reviewed by the full Board to deter-
 mine whether or note [*sic*] the habitual criminal mandatory
 should be waived in this case. The Board's action in this case
 is to decline to waive the mandatory on the habitual criminal
 finding.[55]

In declining to waive the mandatory minimum term for
Petitioner Blye, the Board considered his crimes, the SRA
ranges, the judge's and prosecutor's recommendations and
pre-sentencing reform act charging practices. His record of
infractions overwhelmingly indicates insufficient reha-
bilitation. Classification Referral/Progress Reports indi-
cated numerous infractions. In November 1986, he received
notice of 10 major infractions. He had several infractions
for drug-related offenses that ultimately resulted in his
being placed in administrative segregation on suspicion of
drug trafficking. The Board properly declined to waive the
mandatory minimum term because Mr. Blye had not shown
meritorious efforts at rehabilitation.

### 3. Themar E. Serr

On December 6, 1971, Themar E. Serr was sentenced
upon three counts of taking and riding in a motor vehicle
without permission of the owner in the King County
Superior Court.[56] The presentence report indicated that he
was suspected of dealing in stolen cars.[57] He was paroled
in April 1973. In July 1976, he stole three dump trucks.[58]
On January 25, 1977, he was convicted and sentenced on
four counts of first degree theft.[59] He was initially placed

[55]Indeterminate Sentence Review Board Decisions and Reasons (Oct. 11,
1989).

[56]Judgment and Sentence, Superior Court of Washington for King County
(Dec. 6, 1971).

[57]Presentence Report (July 22, 1969).

[58]Adult Probation and Parole Violation (Aug. 3, 1976).

[59]Judgment and Sentence, Superior Court of Washington for King County
(Jan. 25, 1977).

on probation.[60] In 1981, he was charged with violating his probation and parole when he was found with numerous stolen trucks and parts in his possession.[61] On October 16, 1981, he was convicted of three counts of first degree possession of stolen property.[62] He was also adjudged to be a *habitual criminal*.[63] As a result of the new conviction, his probation was revoked.[64]

In May 1987, the Board reviewed Petitioner Serr's minimum terms and reset his minimum term on the first degree theft at 9 months. It maintained the mandatory 180-month minimum term on three counts of first degree possession of stolen property. The Board stated that Mr. Serr's offenses warranted an "aggravated" minimum term because of his lack of rehabilitation and because he was a "major offender by analogy of RCW 9.94A.390."[65]

In 1989, after passage of SHB 1457, the Board again reviewed Petitioner Serr's case to determine whether it should waive his mandatory minimum term. The King County Prosecuting Attorney recommended against waiver.[66] The Board did not waive the mandatory mini-

---

[60] Judgment and Sentence, Superior Court of Washington for King County (Jan. 25, 1977).

[61] Adult Probation and Parole Violation (Apr. 8, 1981).

[62] Judgment and Sentence, Superior Court of Washington for King County (Oct. 16, 1981).

[63] Judgment and Sentence, Superior Court of Washington for King County (Oct. 16, 1981).

[64] Order Revoking Order Suspending Sentence, Superior Court of Washington for King County (Oct. 16, 1981).

[65] Indeterminate Sentence Review Board Decisions and Reasons (May 15, 1987).

[66] Letter from King County Prosecuting Attorney to Dennis Marsh (July 21, 1989).

mum term.[67] The Board again concluded in writing that Mr. Serr's lack of rehabilitation and the major economic impact of his offenses warranted an exceptional minimum term. The Board noted that the sentencing judge and the prosecutor recommended 15 years and 30 years, respectively.[68]

In the case of Petitioner Serr, the Board based its decision primarily on his lack of rehabilitation. In an affidavit dated April 3, 1990, Chairperson Kathryn S. Bail, Indeterminate Sentence Review Board, stated:

> Following passage of RCW 9.95.013, the Board no longer applies Rule 3.140(3) to determine when it will consider waiver of the fifteen (15) year mandatory term imposed on habitual criminals. Under the recent statutory change, the review first focussed [sic] on the individual's demonstrated efforts at rehabilitation. In addition to the factors listed in RCW 9.95.013, the Board also reviewed the habitual criminal's institution history, and took special note of prison infractions, disciplinary findings and progress reports. Based on this overall review, the Board did not waive the mandatory term unless the habitual criminal had demonstrated meritorious efforts at rehabilitation. If meritorious rehabilitation was sufficient to waive the mandatory, the Board's next action was to set a minimum term at less than the fifteen (15) year mandatory minimum term.

Information provided in the affidavit complies with this court's requirement announced in *Addleman*:[69]

> RCW 9.95.009(2) explicitly mandates that the Board make decisions reasonably consistent with the SRA. . . . Conformance of pre-July 1 1984 [sic] sentences to SRA standards pursuant to RCW 9.95.009(2) does not necessarily result in an inmate's release upon completion of that time; the inmate must also be determined to be parolable.

---

[67]Indeterminate Sentence Review Board Decisions and Reasons (Oct. 11, 1989).

[68]Indeterminate Sentence Review Board Decisions and Reasons (Oct. 11, 1989).

[69]*Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 508, 730 P.2d 1327 (1986).

### 4. Lester Carl Chatman

In 1972, Lester Carter Chatman[70] pleaded guilty to second degree burglary in the King County Superior Court.[71] He was sentenced to a maximum of 15 years and placed on probation.[72] In 1974, he pleaded guilty to robbery and was sentenced to a maximum term of 20 years to run concurrently with the 1972 conviction. He was released on parole on May 24, 1976.[73]

Petitioner Chatman had an extensive record as a juvenile. He was first arrested when he was 12 years of age. His juvenile history reflects delinquencies including property damage, prowling, burglary, assault, larceny, automobile theft, and other offenses related to drug abuse.[74] As an adult, he was diagnosed as a serious drug abuser, a condition which persisted throughout his sentencing history.

On February 25, 1977, Petitioner Chatman, upon his plea of "guilty" to burglary in the second degree, was sentenced to a maximum term of 10 years suspended on specified conditions, including serving 1 year in the King County Jail.[75]

On January 25, 1978, Petitioner Chatman was found guilty of burglary in the second degree.[76] On February 14,

---

[70]Although this case is listed under the name "Lester Carl Chatman", the superior court documents refer to petitioner as "Lester Carter Chatman".

[71]Two Warrants of Commitment to Washington Corrections Center (June 12, 1974).

[72]Two Warrants of Commitment to Washington Corrections Center (June 12, 1974).

[73]Order of Parole and Conditions (May 13, 1976).

[74]Presentence Report, Office of Probation and Parole (May 17, 1972).

[75]Judgment and Sentence, Superior Court of Washington for King County (Feb. 25, 1977).

[76]Judgment and Sentence, Superior Court of Washington for King County (Feb. 14, 1978).

1978, he was adjudged to be a *habitual criminal* and sentenced to life imprisonment, with revocation of probation on the 1977 burglary conviction.[77]

On March 7, 1978, the Board of Prison Terms and Paroles issued an order of parole revocation and determination of new minimum sentence of 3 years for Mr. Chatman's 1974 robbery conviction.[78] On that same date, the Board fixed a minimum term of 6 years for his 1977 burglary conviction to run consecutively with his 1978 burglary conviction.[79]

On May 15, 1980, Petitioner Chatman was placed on work release in Pierce County.[80] On August 28, 1980, the Parole Board ordered him to be released on parole on November 6, 1980.[81] He was continued on parole despite numerous violations.

In 1983, Petitioner Chatman was convicted in the Seattle Municipal Court of misdemeanor charges of criminal trespass, harassment, resisting arrest and breaking a car window. He also violated two "technical" conditions of his parole.[82]

On April 13, 1984, the King County Superior Court revoked Mr. Chatman's probation on the 1978 second degree burglary conviction and the habitual criminal conviction and sentenced him to life in prison.[83] The court

---

[77]Judgment and Sentence, Superior Court of Washington for King County (Feb. 14, 1978).

[78]Order of Parole Revocation and Determination of New Minimum Sentence (Mar. 7, 1978).

[79]Sentence fixed by Board (Mar. 7, 1978).

[80]Board of Prison Terms and Paroles Pre-Parole Investigation Report (July 29, 1980).

[81]Order of Parole and Conditions (Aug. 28, 1980).

[82]Adult Probation and Parole Violation (Dec. 14, 1983).

[83]Order Revoking Order Suspending Sentence (Apr. 13, 1984).

recommended no minimum term. The Prosecuting Attorney recommended waiver of the 15-year mandatory minimum and instead recommended 7½ years. On November 26, 1984, the Parole Board set his minimum term at 180 months, the mandatory minimum for a habitual criminal.[84]

In April 1986, the Board of Prison Terms and Paroles reconsidered Mr. Chatman's minimum terms pursuant to RCW 9.95.009(2).[85] The Board declined to reduce his minimum term for the 1974 robbery conviction and for the 1977 second degree burglary conviction. Additionally, the Board declined to reduce the 15-year mandatory minimum on the 1978 second degree burglary conviction and the habitual criminal conviction.[86]

On April 26, 1986, the Parole Board set Petitioner Chatman's minimum term at 12 months for his 1974 burglary and robbery convictions.[87]

On July 21, 1989, the King County Prosecuting Attorney by letter advised the Parole Board of opposition to waiver of the mandatory minimum of 15 years for named habitual criminals, including Petitioner Chatman. On October 11, 1989, the Indeterminate Sentence Review Board declined to waive Mr. Chatman's mandatory minimum term.[88] In an amended decision, the Board specified the basis for its decision to decline the waiver:

> Pursuant to Substitute House Bill 1457, the Board has reviewed and considered all of the statutory requirements of RCW 9.95.009(2) with regard to the case of Lester Chatman, to determine whether or not the Board should waive the habitual criminal mandatory imposed by the sentencing court. Specifically, the Board has considered the purposes and standards of the SRA, the SRA ranges for each of Mr.

---

[84]Sentence fixed by Board (Nov. 26, 1984).

[85]Decisions and Reasons (Apr. 30, 1986).

[86]Decisions and Reasons (Apr. 30, 1986).

[87]Decisions and Reasons (Apr. 26, 1986).

[88]Decisions and Reasons (Oct. 11, 1989).

Chatman's crimes, the recommendation of the prosecutor and sentencing judge, former charging and dispositional practices, and for the further purpose of the exercise of the discretionary decision of waiver, pursuant to 9.95.040, all reports of institutional conduct and progress, as well as the number and nature of the crimes themselves.

Mr. Chatman has a criminal history beginning in 1974 in the State of Washington to include burglary second, robbery second, a parole violation, a new burglary second, another parole violation, and a 1984 burglary in the second degree, to which the habitual criminal mandatory [sic] was applied — that burglary in the second degree holds a life maximum.

The Board declines to waive the mandatory after review and consideration of the factors cited above as well as the number and nature of Mr. Chatman's convictions.

The Board takes note of a recent copy of a classification report indicating that Mr. Chatman continues to maintain a satisfactory adjustment to confinement and shows no recent infractions.[89]

In Petitioner Chatman's case, the Indeterminate Sentence Review Board provided adequate written reasons for declining to waive the mandatory minimum term under the sentencing reform act and the habitual criminal statute. RCW 9.95.040(3), (4). In its deliberations, the Board considered the purposes and standards of the SRA, the SRA ranges for each of Mr. Chatman's crimes, the recommendation of the prosecutor and sentencing judge, former charging and dispositional practices, all reports of institutional conduct and progress, and the number and nature of the crimes that Petitioner Chatman committed. The Board then declined to waive the mandatory minimum term.

DISCUSSION OF AUTHORITIES

Determinations by the Indeterminate Sentence Review Board are principally governed by RCW 9.95.

RCW 9.95.009(2) provides in pertinent part that:

When making decisions on duration of confinement, including those relating to persons committed under a mandatory life sentence, and parole release under RCW 9.95.100 and 9.95.110, the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.040 and the minimum term recommendations of the sentencing

[89]Decisions and Reasons (Mar. 22, 1990).

judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations: *Provided,* That the board and its successors shall give adequate written reasons whenever a minimum term or parole release decision is made which is outside the sentencing ranges adopted pursuant to RCW 9.94A.040. In making such decisions, the board and its successors shall consider the different charging and disposition practices under the indeterminate sentencing system.

Additionally, RCW 9.92.090 provides that:

Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been twice convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in the state penitentiary for not less than ten years.

Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life.

Further, RCW 9.95.052 states that:

At any time after the board (or the court after July 1, 1986) has determined the minimum term of confinement of any person subject to confinement in a state correctional institution, the board may request the superintendent of such correctional institution to conduct a full review of such person's prospects for rehabilitation and report to the board the facts of such review and the resulting findings. Upon the basis of such report and such other information and investigation that the board deems appropriate, the board may redetermine and refix such convicted person's minimum term of confinement whether the term was set by the board or the court.

The board shall not reduce a person's minimum term of confinement unless the board has received from the depart-

ment of corrections all institutional conduct reports relating to the person.

Additionally, RCW 9.95.013[90] states that:

The board shall apply all of the statutory requirements of RCW 9.95.009(2), requiring decisions of the board to be reasonably consistent with the ranges, standards, and purposes of the sentencing reform act, chapter 9.94A RCW, and the minimum term recommendations of the sentencing judge and the prosecuting attorney, to every person who, on July 23, 1989, is incarcerated and has been adjudged under the provisions of RCW 9.92.090.

RCW 9.95.040 states that:

(3) *For a person convicted of being an habitual criminal within the meaning of the statute which provides for mandatory life imprisonment for such habitual criminals, the duration of confinement shall not be fixed at less than fifteen years.* The board shall retain jurisdiction over such convicted person throughout his natural life unless the governor by appropriate executive action orders otherwise.

. . . .

Except when an inmate of the reformatory, penitentiary, or such other penal institution as may hereafter be established *has been convicted of murder in the first or second degree, the board may parole an inmate prior to the expiration of a mandatory minimum term, provided such inmate has demonstrated a meritorious effort in rehabilitation and at least two-thirds of the board members concur in such action*: *Provided,* That any inmate who has a mandatory minimum term and is paroled prior to the expiration of such term according to the provisions of this chapter shall not receive a conditional release from supervision while on parole until after the mandatory minimum term has expired.

(Italics ours.)

 This court has stated that "courts are *not* a super Indeterminate Sentencing Review Board and will not interfere with a Board determination in this area unless the Board is first shown to have *abused its discretion* in setting a prisoner's discretionary minimum term."[91] Articulating a standard for abuse of discretion, this court in *In re Myers* (relating to action by the predecessor Board

---

[90]Formerly SHB 1457, 51st Legislature (1989).

[91]*In re Whitesel*, 111 Wn.2d 621, 628, 763 P.2d 199 (1988).

of Prison Terms and Paroles)[92] quoted with approval from *State v. Hurst*[93] and stated:[94]

> [T]he Court of Appeals stated that it has "stressed the necessity for the record to reveal a basis for the exercise of the discretionary determination and [has] indicated where this basis is present, [it] will hold that discretion is abused only where it can be said no reasonable man would take the view adopted . . . ."[95]

 In determining whether the Board abused its discretion with respect to either of the petitioners in these cases, we look principally to this court's decision in *Whitesel*.[96] This court in that case stated:

> The criteria used by the Board to set her exceptional sentence, the recommendations of the sentencing judge and prosecuting attorney and the brutality the petitioner employed in committing the crime of which she was convicted, were appropriate considerations. The trial judge recommended a 10-year minimum, which was substantially longer than the guideline term, and the brutality employed by petitioner far exceeded that necessary to commit the crime of first degree robbery of which she was convicted. The Board provided adequate written reasons justifying the 84-month minimum term it set.

(Footnotes omitted.)

Additionally, in *Myers* this court held that a "minimum term should not be recomputed if (1) the record shows the [Parole] Board considered the SRA presumptive ranges in computing a felon's minimum term, *and* (2) the sentence imposed falls within the standard range, *or* adequate reasons exist in the record to justify a departure from the standard range."[97]

---

[92]On July 1, 1986, the Board of Prison Terms and Paroles was redesignated as the Indeterminate Sentence Review Board. RCW 9.95.009.

[93]5 Wn. App. 146, 486 P.2d 1136 (1971).

[94]*In re Myers*, 105 Wn.2d 257, 714 P.2d 303 (1986).

[95]*In re Myers*, 105 Wn.2d 257, 265, 714 P.2d 303 (1986).

[96]*In re Whitesel*, 111 Wn.2d 621, 629, 763 P.2d 199 (1988).

[97]*In re Myers*, 105 Wn.2d 257, 268-69, 714 P.2d 303 (1986).

In *Hunter*,[98] petitioner argued that he was entitled to a minimum term consistent with the SRA range. The Board of Prison Terms and Paroles set his term at 5 years, consistent with the deadly weapon enhancement in RCW 9.95-.040(1). This court stated that the statute, RCW 9.95-.009(2), "requires the parole board to 'consider' the SRA standards, and to 'attempt' to make decisions reasonably consistent with them." And since the deadly weapon statute expressly mandated a mandatory minimum sentence which exceeded those standards, the court concluded that its effect was to prohibit the board from matching the SRA standards in such cases.[99]

The habitual criminal statute, RCW 9.95.040, mandates a minimum term of 15 years, which, stated in months, is 180 months. In most instances that exceeds the SRA standards. The Board is required to consider those standards and attempt to make decisions reasonably consistent with them, provided that adequate written reasons are given if the Board does not conform to them.[100]

In *Addleman*, this court stated that:

> The Board for adequate written reasons can decide not to conform a sentence to the SRA. Such decision should be the exception, however, not the rule. . . . Examples of reasons for decisions not conforming to the SRA at parole hearings would be insufficient rehabilitation and improper parole plans.[101]

(Citations omitted.)

In reaching a determination whether an inmate is parolable, the Board looks to factors stated in RCW 9.95.013.[102]

---

[98]*In re Hunter*, 106 Wn.2d 493, 723 P.2d 431 (1986).

[99]*Hunter*, at 497.

[100]*Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 730 P.2d 1327 (1986).

[101]*Addleman*, at 511.

[102]RCW 9.95.013 states:
"The board shall apply all of the statutory requirements of RCW 9.95.009(2), requiring decisions of the board to be reasonably consistent with the ranges, standards, and purposes of the sentencing reform act, chapter 9.94A RCW, and

That statute refers to the habitual criminal statute, RCW 9.92.090. RCW 9.92.090 includes persons convicted of a felony "who shall previously have been twice convicted" of a felony and adjudged to be a habitual criminal who "shall be punished by imprisonment in the state penitentiary for life."

This court in *Addleman* observed that "[e]xamples of reasons for decisions not conforming to the SRA at parole hearings would be insufficient rehabilitation and improper parole plans."[103] However, these cases do not involve a parole hearing as such, but rather involve the procedure of setting a minimum term. In *Addleman,* this court further stated that "[e]xamples of reasons for decisions not conforming to the SRA at the minimum term setting would be aggravating and mitigating circumstances delineated in RCW 9.94A.390 or statutory preclusion." The "statutory preclusion" is the habitual criminal statute, RCW 9.92.090.

In her affidavit, Chairperson Bail stated that the Board first focuses on meritorious efforts at rehabilitation. But this was not the sole basis for a decision not to waive the mandatory minimum sentence. This is consistent with the Legislature's intent and with our direction in *Addleman* that "Board decisions on duration of confinement must be made in accordance with the requirements of RCW 9.95.009(2)."[104] Under RCW 9.95.009(2), the Board "shall consider . . . the minimum term recommendations of the sentencing judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations", provided that the Board gives adequate written reasons for its decision if it is outside the sentencing ranges adopted

---

the minimum term recommendations of the sentencing judge and the prosecuting attorney, to every person who, on July 23, 1989, is incarcerated and has been adjudged under the provisions of RCW 9.92.090."

[103]*Addleman,* at 511.

[104]*Addleman,* at 511-12.

pursuant to RCW 9.94A.040. Further, the record of each petitioner in this case contains a minimum term recommendation outside the sentencing range adopted pursuant to RCW 9.94A.040, wholly within the umbrella of the statute.

CONCLUSION

It is clear that in each of these cases, the Indeterminate Sentence Review Board was correct in declining to waive the mandatory minimum sentence. The Board acted consistent with the requirements of statute and the prior rulings of this court.

The personal restraint petitions of Marquis Eckmann, Darryl Keith Blye, Themar E. Serr and Lester Carl Chatman are denied.

DORE, C.J., and UTTER, DOLLIVER, GUY, and JOHNSON, JJ., concur.

DURHAM, J. (concurring) — I have some difficulty determining which position the majority adopts — the Indeterminate Sentence Review Board's (Board), the petitioners', or a hybrid of the two. The majority affirms the Board after concluding that it did not abuse its discretion, but fails to say if, as argued by the Board, such discretion only comes into play when the Board is deciding if the mandatory minimum term should be waived. Nor does the majority address the Board's reliance on *In re Hunter*, 106 Wn.2d 493, 723 P.2d 431 (1986), to argue that written reasons are not required for a mandatory minimum sentence outside the ranges set forth in the Sentencing Reform Act of 1981 (SRA).[105] On the other hand, the majority appears to adopt the petitioners' position that written findings are required, but never addresses peti-

---

[105]*Hunter* noted that RCW 9.95.009(2) had been amended in 1986 to require adequate written reasons if a sentence is set outside of the SRA ranges. This did not affect our analysis, however, because RCW 9.95.040(1) provided a statutory reason for imposing a mandatory minimum term. *Hunter*, at 497 n.11.

tioners' argument that RCW 9.95.013 overrides the habitual criminal statutes entirely.[106]

Given *Hunter* (which was decided 3 years before RCW 9.95.013 was enacted), and the failure of the Legislature to repeal or amend RCW 9.92.090 and RCW 9.95.040(3), (4), and .011,[107] I believe the Board has the better position; *i.e.*, that the initial setting of minimum terms for pre-SRA habitual offenders is mandated by statute. This precludes the application of RCW 9.95.009(2) and obviates the need for written reasons justifying the length of the sentence. The factors listed in RCW 9.95.009(2) and RCW 9.95.013, and the requirement for written findings, however, will apply to subsequent decisions regarding waiver of the mandatory minimum.

BRACHTENBACH and ANDERSEN, JJ., concur with DURHAM, J.

Reconsideration denied January 10, 1992.

---

[106]The majority also fails to address relevant legislative history. Prior to passage of Substitute House Bill 1457, the following language supporting petitioners' position was proposed by the Senate, but rejected by the House. House Journal, 51st Legislature (1989), at 2403.

The board shall conduct a review of every person who, on the effective date of this act, is incarcerated and has been adjudged under the former provisions of RCW 9.92.090. For those persons incarcerated on the effective date of this act, *the board shall set a minimum term without regard to such status,* pursuant to the provisions of chapter 9.95 RCW. . . .

(Italics mine.) House Journal, at 2202-03.

[107]RCW 9.95.011, enacted in 1986 (Laws of 1986, ch. 224, § 7) and overlooked by the majority, addresses the court's duty to set minimum terms after the Board no longer functions in that capacity. It provides, in part:

The court shall attempt to set the minimum term reasonably consistent with the purposes, standards, and sentencing ranges adopted under [the SRA], but the court is subject to *the same limitations as those placed on the board under RCW 9.92.090, 9.95.040 (1) through (4)* . . ..

(Italics mine.)