[Nos. 51181–1, 51601–4. En Banc. January 23, 1986.]

*In the Matter of the Personal Restraint of*
SUSAN AYERS, ET AL, *Petitioners.*

*In the Matter of the Personal Restraint of*
GEORGE W. LOVER, *Petitioner.*

---

[10]*Saxbe v. Washington Post Co.,* 417 U.S. 843, 863, 41 L. Ed. 2d 514, 94 S. Ct. 2811 (1974) (Powell, J., dissenting).

*Patricia J. Arthur* and *Robert A. Stalker, Jr.,* of *Evergreen Legal Services,* for petitioners.

*Kenneth O. Eikenberry, Attorney General,* and *Douglas D. Walsh* and *David R. Minikel, Assistants,* for respondent.

*Valerie L. Hughes* on behalf of the American Civil Liberties Union, amicus curiae for petitioners.

BRACHTENBACH, J.—A personal restraint petition was brought on behalf of five prisoners. All, with one exception, are confined beyond their original minimum terms as set by the Board of Prison Terms and Paroles. A separate petition by Lover was consolidated. All petitioners allege that they are mentally ill and/or developmentally disabled. They assert violations of due process, equal protection and state statutes.

Petitioners' crimes were committed prior to July 1, 1984, and, therefore, they come within the indeterminate sentencing scheme of RCW 9.95, rather than the Sentencing Reform Act of 1981, RCW 9.94A, which is generally effective for crimes committed after July 1, 1984. RCW 9.94A-.905.

The scheme of determining release dates is as follows: (a) Under RCW 9.95.040 the Board fixes the minimum term

with certain statutory minimums not applicable here; (b) RCW 9.95.052 authorizes a redetermination of the minimum term; (c) RCW 9.95.070 permits time credit reductions for good behavior; and (d) RCW 9.95.080 allows redetermination of the minimum for infractions.

The critical language in this case is contained in RCW 9.95.100: "The board shall not, however, until his maximum term expires, release a prisoner, unless in its opinion his rehabilitation has been complete and he is a fit subject for release."

In summary, we hold (1) that RCW 9.95.100 is not unconstitutionally vague; (2) that petitioners do not have a protected liberty interest in parole release at the expiration of the Board set minimum terms; (3) that the procedures used for parolability hearings are constitutionally adequate, when followed; (4) petitioners were not denied equal protection; and (5) there was no violation of statutory duties by the State. We thus deny the petitions but return these matters to the Board for further action as described hereafter.

While there are some factual differences among petitioners, the common thread of the allegations are (1) a minimum term less than the maximum was set; (2) one or more parolability hearings were held; (3) the petitioners were denied parole; and (4) minimum terms were extended, in some cases, to the maximum.

Petitioners' first challenge is that RCW 9.95.100 is unconstitutionally vague, claiming that the provision that the Board shall not parole an inmate "unless in its opinion his rehabilitation has been complete and he is a fit subject for release" is so standardless that it violates due process.

The cases relied upon by petitioners are distinguishable. *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967); *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975); and *State v. Maciolek,* 101 Wn.2d 259, 676 P.2d 996 (1984), all involved laws which defined the proscribed conduct, *i.e.,* created the crime. The principle of adequate specificity in creating a crime is quite a different matter

from the discretionary exercise of statutory authority by the executive branch. One proscribes certain conduct and attaches criminal penalties; the other grants power to the Board to make wholly discretionary determinations over convicted persons in granting or denying a privilege. *January v. Porter,* 75 Wn.2d 768, 453 P.2d 876 (1969).

Petitioners' attempt to analogize to other cases, *e.g., Sands v. Wainwright,* 357 F. Supp. 1062, 1390 (M.D. Fla.), *rev'd on other grounds,* 491 F.2d 417 (5th Cir. 1973) and *Grant Cy. v. Bohne,* 89 Wn.2d 953, 955, 577 P.2d 138 (1978), also fails since those cases likewise dealt with determination of proscribed conduct (standards of prison behavior and zoning prohibitions), not the exercise of discretionary executive power. The statute is constitutional.

Next, petitioners argue that if the statute is constitutional, they still have been denied due process since the Board must afford them certain procedural safeguards since a protected liberty interest is at stake.

 The controlling premise is whether petitioners have a protected liberty interest in the *potential* of parole. The existence of that interest must be established before due process requirements come into play. As pertinent here, U.S. Const. amend. 14 and Const. art. 1, § 3 require a deprivation of liberty before imposition of the due process mandate of either constitution.

Petitioners have no such liberty interest in the potential of parole. The definitive case is *Greenholtz v. Inmates,* 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979). The Court said:

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum v. Fano,* 427 U. S. 215, 224, [49 L. Ed. 2d 451, 96 S. Ct. 2532] (1976).

Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error–free determinations. See *Id.,* at 225; *Montanye* v. *Haymes,* 427 U. S. 236 [49 L. Ed. 2d 466, 96 S. Ct. 2543] (1976); *Moody* v. *Daggett,* 429 U. S. 78, 88 n.9 [50 L. Ed. 2d 236, 97 S. Ct. 274] (1976). This is especially true with respect to the sensitive choices presented by the administrative decision to grant parole release.

A state may, as Nebraska has, establish a parole system, but it has no duty to do so. Moreover, to insure that the state–created parole system serves the public–interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority. It is thus not surprising that there is no prescribed or defined combination of facts which, if shown, would mandate release on parole. . . .

Respondents suggest two theories to support their view that they have a constitutionally protected interest in a parole determination which calls for the process mandated by the Court of Appeals. First, they claim that a reasonable entitlement is created whenever a state provides for the *possibility* of parole. Alternatively, they claim that the language in Nebraska's statute, Neb. Rev. Stat. § 83–1,114(1) (1976), creates a legitimate expectation of parole, invoking due process protections.

. . .
The fallacy in respondents' position is that parole *release* and parole *revocation* are quite different. There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires. . . .

. . .
The parole–release decision, however, is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole deter-

mination, like a prisoner–transfer decision, may be made "for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate." *Meachum* v. *Fano,* 427 U. S., at 225.
The decision turns on a "discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done." Kadish, The Advocate and the Expert—Counsel in the Peno–Correctional Process, 45 Minn. L. Rev. 803, 813 (1961).

The differences between an initial grant of parole and the revocation of the conditional liberty of the parolee are well recognized. In *United States ex rel. Bey* v. *Connecticut Board of Parole,* 443 F. 2d 1079, 1086 (1971), the Second Circuit took note of this critical distinction:

"It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom."

. . .

That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained. *Board of Regents* v. *Roth,* 408 U. S. [564], . . . 577 [33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)]. To that extent the general interest asserted here is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process. *Meachum* v. *Fano,* 427 U. S., at 225; *Montanye* v. *Haymes, supra.*

(Footnote omitted.) *Greenholtz,* at 7–11.

Petitioners contend that two of this court's decisions mandate a different result than *Greenholtz.* We disagree. In *Monohan v. Burdman,* 84 Wn.2d 922, 530 P.2d 334 (1975), the Board in fact had made a determination that the petitioner was a fit subject for parole, had ordered a parole and established a fixed date for release. We held that minimal due process safeguards attached to the procedure to rescind the parole grant as of a specific date. Thus the action was more akin to a parole revocation proceeding than the determination of eligibility for parole.

*In re Sinka,* 92 Wn.2d 555, 599 P.2d 1275 (1979) involved the original setting of the minimum term where there are statutory requirements as to matters to be considered by the Board. RCW 9.95.030, .031, and .040. We were concerned that the records upon which the determination of the original setting was made allegedly contained misleading or inaccurate information. Again that issue is different from the proceedings under RCW 9.95.100 where the Board is evaluating parolability under the very generalized standard authorized by the Legislature. These petitioners make no allegations of misleading or inaccurate information. They, instead, quarrel with the lack of certain procedures, discussed in part hereafter, and dispute the conclusion of the Board. It is self–evident that if the inmate is not parolable or there is not an acceptable plan of parole, then the minimum term is necessarily extended. The Board has no authority to release the inmate before the maximum is served. It is noted that the statute *prohibits* the Board from releasing prior to service of the maximum *unless* the Board, *in its opinion,* finds the two stated conditions have been met. RCW 9.95.100.

Petitioners next raise an equal protection issue. They contend that, as mentally ill or developmentally disabled persons, they are treated differently than other potentially parolable persons. Those allegations may well be correct, but we know of no principle that says that people who are *in fact* different, through no fault of their own, must be treated the same as persons who are *in fact* different from those who assert they must be treated the same as others. The *very* assertion denies the individuality of people. Equal protection requires equal treatment; it does not make people equal.

While we do not find a constitutional basis for a protected liberty interest, the Board, by its own regulations, has created such an expectation that should be recognized and followed. That is the second holding of *Greenholtz v. Inmates, supra.*

WAC Title 381, rule 5.170 states:

Statement of Findings and Conclusions. The Board will make a concise written statement of findings and conclusions in each case heard under the provisions of this Chapter.

This record is woefully lacking in compliance with this regulation. For example, one file states the Board's decision: "Minimum term ten years and five of that is mandatory. Minimum term ten years on count two and that's consecutive and reschedule . . . progress meeting." Exhibit L (Personal Restraint Petition). Then, under reasons for decision, the order recites three sexual attacks about which we know nothing from the record, makes a conclusory statement that the inmate is a "retard, but violent and homicidal." What the rule requires, bearing in mind that the result deals with the very liberty of the person, is reasons, not conclusions. Equally lacking is a meaningful opportunity for the development of a potentially acceptable plan.

We return these cases to the Board, without criticism or evaluation of their immensely difficult task, with directions to comply with their own rules.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.