[No. 28474-6-I.   Division One.   May 26, 1992.]

*In the Matter of the Personal Restraint of*
CHARLES CASHAW, *Petitioner.*

*Cece Lana Glenn,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Thornton Wilson, Assistant,* for respondent.

KENNEDY, J. — Charles Cashaw filed a personal restraint petition in this court challenging his present confinement for burglary in the second degree. The case has been referred to a panel of judges for determination on the merits. We grant the petition and remand the matter to the Indeterminate Sentence Review Board (Board) for proceedings consistent with this opinion.

FACTS

In the mid to late 1970's, Cashaw was convicted of burglary in the second degree and grand theft under several King County cause numbers and was sentenced to serve time in prison. Over the years, Cashaw has been released on parole six times and on each occasion his parole has subsequently been revoked. After his parole was revoked for the sixth time in August 1989, Cashaw was returned to prison

to await a decision by the Board regarding his new minimum term of confinement.

On January 25, 1990, the Board set Cashaw's new minimum term at his maximum expiration date. In support of its new minimum term decision, the Board stated:

Board Decision: The new minimum term is to extend to the maximum expiration date. Release on the maximum expiration date which is currently 1/23/92. Upon request of the Department of Correction[s], the Board will review parolability prior to the maximum expiration date if the Department of Corrections presents evidence of any changes in the inmate's prospects for rehabilitation.

Next Action: Release on the maximum expiration date which is currently 1/23/92.

Reasons: Mr. Cashaw has a long criminal history extending some 26 years. He has experienced 6 prior paroles without success. He has clearly demonstrated a lack of rehabilitation by continuing to violate the conditions of his parole and the law. His behavior and actions clearly represent an ongoing threat to people's property, and he continues to demonstrate that he does not intend to cooperate with authorities or cease his unlawful behavior. For these reasons, it would be in the best interest of the citizens of the state of Washington that he be incarcerated as long as the law allows and that he not be released from custody prior to the expiration of his actual maximum expiration date.

Cashaw seeks review of that new minimum term decision.

I

By way of background, Cashaw committed the burglary for which he is presently confined prior to July 1, 1984, the effective date of the Sentencing Reform Act of 1981 (SRA), and he is therefore subject to the authority of the Board. RCW 9.94A.905; RCW 9.95.

RCW 9.95 governs indeterminate sentences and resulting prison terms, paroles and parole revocations. Under the indeterminate sentencing system, the court is required to set the maximum sentence. RCW 9.95.010. Once a person is committed to prison, the Board is required to fix his minimum term. RCW 9.95.040; RCW 9.95.052. The Board must set a new

minimum term for any inmate whose parole is revoked. RCW 9.95.125. RCW 9.95.070 allows inmates whose conduct is good while they are in prison and who perform their work faithfully, industriously and diligently to earn credit reductions from the minimum terms set by the Board. These credits are colloquially referred to as "good-time credits".

If an inmate commits an infraction while in the penitentiary or other correctional institution, his minimum term may be increased, not exceeding the maximum penalty provided by law, however, and he may be required to forfeit all or a part of his good-time credits, whether already earned or to be earned in the future. RCW 9.95.080. Before this can occur, there must be a hearing before the Board, in the presence of the inmate, who shall be entitled to be heard and who may present evidence and witnesses on his behalf. RCW 9.95.080.

■ Finally, RCW 9.95.100 prohibits the Board from releasing an inmate before his maximum term expires, unless in the Board's opinion the inmate's "rehabilitation has been complete and he is a fit subject for release." An inmate who has served his minimum term less allowable good time "may" be granted a parole. RCW 9.95.110. Parole is a privilege which "may" be granted by the Board. There is no inherent or constitutional right of a convicted person to be conditionally released before the expiration of the maximum term allowed by law. *State v. Fain*, 94 Wn.2d 387, 394, 617 P.2d 720 (1980).

## II

Cashaw contends that the Board erred in extending his new minimum term to the maximum expiration date.[1] Cashaw argues that the decision of the Board has effectively

---

[1]Although Cashaw's maximum sentence expired shortly after his petition was argued to this court, we will fully address the issues he has raised. The Board has conceded that the issues raised are not frivolous. We are further advised by the Board that similar claims by other inmates are now pending. "[A] court may decide a moot case if it involves matters of continuing and substantial public interest." *In re Chorney*, 64 Wn. App. 469, 474, 825 P.2d 330 (1992).

denied him the ability to earn good-time credit while he serves his new minimum term in prison. Since he has a statutory right to earn good-time credit under RCW 9.95.070 and the prison superintendent recommended that he receive such credit, *see In re Piercy*, 101 Wn.2d 490, 493, 681 P.2d 223 (1984) ("[I]t is the Board's policy to automatically adopt good time certified by a prison superintendent."), Cashaw claims that the Board's decision not to consider him for parole prior to the expiration of his maximum sentence is tantamount to a decision requiring him to forfeit his good-time credits earned or to be earned in the future and is therefore a violation of his right to due process. He claims that he was entitled to an in-person hearing pursuant to RCW 9.95.070 and .080.

■ A. Right to Hearing Under RCW 9.95.080. Under RCW 9.95.080, the Board is authorized to forfeit good-time credits already earned or which could have been earned in the future. The former statute states:

> In case any convicted person undergoing sentence in the penitentiary, reformatory, or other state correctional institution, commits any infractions of the rules and regulations of the institution, the board of prison terms and paroles may revoke any order theretofore made determining the length of time such convicted person shall be imprisoned, including the forfeiture of all or a portion of credits earned or to be earned, pursuant to the provisions of RCW 9.95.110, and make a new order determining the length of time he shall serve, not exceeding the maximum penalty provided by law for the crime for which he was convicted, or the maximum fixed by the court. Such revocation and redetermination shall not be had except upon a hearing before the board of prison terms and paroles. At such hearing the convicted person shall be present and entitled to be heard and may present evidence and witnesses in his behalf.

Cashaw was not entitled to a hearing under RCW 9.95.080. The statute, by its own terms, does not apply where, as here, the decision of the Board was not in response to "any infractions of the rules and regulations of the institution". RCW 9.95.080 only applies to inmates who commit infractions while in prison. It is undisputed that Cashaw has always

been a well-behaved prison inmate. Cashaw's problems arise every time he is released on parole.

    ■ B. Right to Hearing Under RCW 9.95.070. Inmates are entitled to earn good-time credits pursuant to RCW 9.95.070, which provides:

> Every prisoner who has a favorable record of conduct at the penitentiary or the reformatory, and who performs in a faithful, diligent, industrious, orderly and peaceable manner the work, duties, and tasks assigned to him to the satisfaction of the superintendent of the penitentiary or reformatory, and in whose behalf the superintendent of the penitentiary or reformatory files a report certifying that his conduct and work have been meritorious and recommending allowance of time credits to him, shall upon, but not until, the adoption of such recommendation by the board of prison terms and paroles, be allowed time credit reductions from the term of imprisonment fixed by the board of prison terms and paroles.

This statute does not, by itself, create a right to a hearing prior to deprivation of good-time credits. However, the law is well settled that "where a state creates a right to earn good time credit, a prisoner has a liberty interest in those credits which prevents their deprivation absent observation of minimal due process". *In re Borders*, 114 Wn.2d 171, 181, 786 P.2d 789 (1990); *Wolff v. McDonnell*, 418 U.S. 539, 557, 41 L. Ed. 935, 94 S. Ct. 2963 (1974); *In re Mota*, 114 Wn.2d 465, 474, 788 P.2d 538 (1990) ("Good-time credit is a recognized liberty interest."); *In re Anderson*, 112 Wn.2d 546, 548, 772 P.2d 510 (1989) ("Statutory right to good time credits constitutes a liberty interest which is protected by the due process clause."). Thus, at a minimum, an inmate is constitutionally entitled to notice, a hearing, a qualified right to present evidence, and a written statement of reasons before he or she may be deprived of the right to earn good-time credit. *Wolff*, at 418 U.S. at 564-67.

    The Board argues, and we agree, that since the primary function of good-time credit is to accelerate an inmate's eligibility for parole, a determination that the inmate will not be parolable until his maximum expiration date renders

credit for good time irrelevant.[2] The Board claims that by setting Cashaw's new minimum term at his maximum expiration date, it has in essence held a parolability hearing under RCW 9.95.100 and determined that Cashaw will not be parolable before the expiration of his maximum sentence. Thus, the Board argues that Cashaw has not been denied the right to earn future good-time credit, and therefore due process protections for deprivation of good-time credit simply do not apply.

■ This argument, however, overlooks the fact that the Board's "parolability" decision at Cashaw's minimum term review violated its own rules for conducting parolability hearings.[3] According to WAC 381-60-060 (Board rule 5.060), an inmate is entitled to receive notice of any pending parolability hearing and the notice "shall specify the type, time, and place of the hearing as well as the reason for the hearing." WAC 381-60-070 (Board rule 5.070) relates to parolability hearings and provides:

> Each inmate who becomes the subject of a hearing conducted under the provisions of RCW 9.95.100 shall be advised

---

[2]Through good-time credits, an inmate may be able to reduce his or her minimum term by up to one-third. RCW 9.95.110. An award of good time therefore shortens the time an inmate must serve in prison before he or she becomes eligible for parole. Cashaw, as a pre-SRA offender, has no inherent right to be conditionally released from custody simply by becoming eligible for parole. *In re Ayers*, 105 Wn.2d 161, 164-67, 713 P.2d 88 (1986). Once an inmate is eligible for parole, the Board still cannot parole the inmate "unless in its opinion his rehabilitation has been complete and he is a fit subject for release." RCW 9.95.100. In other words, the Board must still find the inmate to be parolable. *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 508, 730 P.2d 1327 (1986). Consequently, a determination that an inmate will not be parolable until expiration of his or her maximum term necessarily precludes parole eligibility and renders good-time credits irrelevant. We express no opinion regarding whether a new minimum term set following a parolability hearing at less than the maximum expiration date revives an inmate's right to earn good-time credit under RCW 9.95.070.

[3]RCW 9.95.110 allows the Board to establish rules and procedures for determining the circumstances under which an inmate may be permitted to leave the confines of prison on parole. The Board has adopted rules relating to the parole of adult offenders who have been sentenced and committed under the indeterminate sentencing laws of this state. *See* WAC 381-60 (effective July 27, 1991).

of his rights orally and in writing, at the time he is served with a notice of the hearing. The *written notice* provided by the board *will advise the resident that*:

(1) His minimum term may be redetermined but not until after a hearing in front of the board where he is present and given the opportunity to be heard under the oath;

(2) He will have *the right to present evidence and witnesses* in his behalf;

(3) He will have *the right to have an attorney present,* but at his own expense since the board has no funds to pay for attorneys, witness fees, the cost of subpoenas, or any other related costs that may be incurred by the inmate.

(Italics ours.) WAC 381-60-120 (Board rule 5.120) also relates to parolability hearings and states:

The subject of any hearing conducted under the provisions of this chapter *shall be present during the conduct of the hearing.* However, in the event the subject refuses to appear, the board will continue the hearing until the next scheduled visit by the board to that particular institution. In the event that the subject of the hearing again refuses to appear, then the hearing will be conducted in absentia.

### III

The Board contends that these Board rules do not contain mandatory language requiring it to hold an in-person hearing before making parolability determinations. Thus, the Board argues that Cashaw does not have a protectable liberty interest in receiving a parolability hearing. For a liberty interest to be created by the State, a statute or regulation must contain language of an unmistakably mandatory character. *Hewitt v. Helms,* 459 U.S. 460, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983); *In re Dowell,* 100 Wn.2d 770, 773, 674 P.2d 666 (1984) ("Liberty interests cognizable under the due process clause have been recognized whenever the State places specific mandatory limits on official discretion.").

It is apparent from the manner in which the rules governing parolability determinations are written that the Board never intended to make a parolability determination without an in-person hearing. The chapter of the Board rules governing parolability determinations (chapter 5) is entitled "PROCEDURES FOR CONDUCTING PAROLABILITY *HEARINGS*". (Italics ours.) The stated purpose of these rules "is to

specify policies and procedures relating to hearings conducted to determine the parolability of certain offenders." WAC 381-60-010 (Board rule 5.010). The rules apply to all pre-SRA offenders such as Cashaw and "those state officials charged with their care and supervision, and parties to the hearing." WAC 381-60-030 (Board rule 5.030). The rules are therefore intended to guide prison officials as well as inmates.

The Board relies on Board rule 5.040, which provides:

> RCW 9.95.100 states that any convicted person undergoing sentence in the penitentiary or reformatory not sooner released under the provisions of this chapter shall, in accordance with the provisions of law, be discharged from custody for the offense of which such person was convicted or the maximum term fixed by the court where the law does not provide for a maximum term. The board shall not, however, until the maximum term expires, release a prisoner unless in its opinion, his rehabilitation has been complete and he is a fit subject for release. Therefore, if, in the opinion of an institution superintendent, any convicted person serving a sentence in an adult correctional institution is not a fit subject for release and is considered to be incapable of succeeding on parole because of incomplete rehabilitation, the department of corrections may request in writing that the board conduct a hearing pursuant to RCW 9.95.100. The written request shall include:
>
> (1) A statement to the board giving reasons why the subject of the request is unable to be paroled;
>
> (2) Report of the superintendent, pursuant to RCW 9.95-.052;
>
> (3) Supporting data such as psychiatric or psychological reports;
>
> (4) Other reports and information as necessary.
>
> The board reserves the right to schedule hearings pursuant to RCW 9.95.100 on its own motion.

WAC 381-60-040. Since the language of this rule is permissive, not mandatory, the Board argues that the rules do not require "the Board to hold an in-person hearing before it makes a parolability determination." We disagree. The fallacy in the Board's argument can best be illustrated by reference to an entirely different section of the Board rules dealing with disciplinary matters. Board rule 4.040 states in pertinent part:

> Whenever any convicted person sentenced under the indeterminate sentencing law serving sentence in an adult correc-

tional institution commits any infractions of the rules and regulations of the institution, the department of corrections may request, in writing, that the board conduct a disciplinary hearing. . . .

. . . .

The indeterminate sentence review board reserves the right to schedule disciplinary hearings on its own motion when a major rule infraction is brought to the attention of the board.

WAC 381-50-040. The critical "permissive" language in Board rules 4.040 and 5.040 is virtually identical. If we were to construe Board rule 4.040 using the approach the Board would have us apply to Board rule 5.040, we would reach the unlikely result that the rule allows the Board to sanction an inmate charged with a disciplinary infraction with or without conducting a disciplinary hearing. Nothing could be further from the truth. The use of the permissive language in Board rule 4.040 was clearly intended only to grant prison officials discretion on whether to punish an inmate who has been charged with a disciplinary infraction. The authorities retain discretion not to hold a disciplinary hearing even though the inmate has committed an infraction of the prison rules and regulations. Similarly, the use of the permissive language in Board rule 5.040 is only significant in that it allows the Secretary of the Department of Corrections, in addition to the Board, to request that a parolability hearing be held. Viewed in proper context, the Board rules inhibit the Board's discretion to review an inmate's parolability without conducting a parolability hearing. By requiring prison officials to proceed in a certain fashion, the rules create a protectable liberty interest.

The Board also argues that, since these rules are strictly procedural in nature, the adoption of the rules does not create a liberty interest subject to constitutional due process protection. However, this argument fails for several reasons. First, the Board's procedural guidelines regarding parolability have assumed a significantly greater role in the overall decisionmaking process following the enactment of the Sentencing Reform Act of 1981. Prior to the SRA, the Board had virtually unfettered discretion in making parolability deci-

sions. *State v. Fain*, 94 Wn.2d 387, 395, 617 P.2d 720 (1980). Inmates confined for crimes committed after the effective date of the SRA are, however, no longer subject to the rigors of a parolability determination. Post-SRA offenders serve a determinate sentence and, having served that fixed term of confinement, are released without regard to whether they continue to represent a danger to society. Recognizing the inherent differences between the two sentencing systems and the possibility for unfair and unequal treatment, the Legislature directed that all parolability determinations for pre-SRA offenders be made reasonably consistent with the purposes, guidelines, and standards of the SRA. *See* RCW 9.95.009(2); *In re Myers*, 105 Wn.2d 257, 267, 714 P.2d 303 (1986); *In re George*, 52 Wn. App. 135, 143, 758 P.2d 13 (1988); *In re Rolston*, 46 Wn. App. 622, 625, 732 P.2d 166 (1987). "RCW 9.95.009 was passed in order to provide guidance to the Board, in light of the Sentencing Reform Act of 1981 (SRA), regarding its functions with respect to persons convicted of crimes committed prior to July 1, 1984." *In re Robles*, 63 Wn. App. 208, 214, 817 P.2d 419 (1991). The Board promulgated its rules relating to parolability determinations pursuant to that statute. WAC 381-60-020 (Board rule 5.020). The procedures set forth in the rules thus provide a framework within which the Board is required to implement the mandate of the Legislature. Pre-SRA offenders such as Cashaw therefore have a legitimate right to expect that the Board will follow its rules regarding parolability. *See Olim v. Wakinekona*, 461 U.S. 238, 249, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983) (The constitutional purpose of process is to protect a substantive interest to which an individual has a legitimate claim of entitlement.).

Moreover, the Board rules are not the only source of Cashaw's due process rights. Cashaw is also entitled to certain minimum due process protections under the federal constitution by virtue of the fact that he was found not to be parolable at the January 25, 1990, new minimum term determination. *See Greenholtz v. Inmates of Neb. Penal &*

*Correctional Complex*, 442 U.S. 1, 16, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979).

By so holding, we do not mean to suggest that prisoners have any due process rights in the timing of a decision on their parolability. *See In re Ayers*, 105 Wn.2d 161, 713 P.2d 88 (1986); *In re Powell*, 117 Wn.2d 175, 202-03, 814 P.2d 635 (1991). *But see Bergen v. Spaulding*, 881 F.2d 719 (9th Cir. 1989). Our narrow holding is only intended to cover situations where the decision has already been made to review a particular inmate's eligibility for parole release. Once that initial decision has been made, the prisoners have a right to expect that the parolability determination will be made in accordance with the Board's own rules. *In re Ayers, supra* at 167-68; *see also In re Locklear*, 118 Wn.2d 409, 420-21, 823 P.2d 1078 (1992). Cashaw was therefore entitled, under the Board rules, to notice and an in-person hearing prior to any decision by the Board regarding his parolability. Cashaw's "hearing" regarding parolability violated the Board's rules because it was merely an administrative minimum term decision held in his absence and nothing in the record before this court indicates that Cashaw received notice that the Board would determine not only his new minimum term, but also his parolability.

## IV

The Board contends in the alternative that even if its January 25 new minimum decision effectively denied Cashaw the right to earn good-time credit and thereby triggered due process protections, Cashaw received the requisite due process at his in-person parole revocation hearing and the administrative review setting his new minimum term. The Board argues that the process provided at these proceedings was the functional equivalent of the process available at a hearing regarding the deprivation of good-time credit.

A reviewing court must, however, examine the substance and not merely the shadows cast by a particular proceeding to insure that the requisite due process protections have been provided. In this case, the parole revocation

hearing did not address Cashaw's parolability and its effect on his right to good-time credit. The purpose and function of parole revocation hearings are not the same as hearings which either directly or indirectly (parolability hearings) deprive an inmate of his or her right to earn good-time credit. Although the matters considered at the hearings may often overlap, the roles of the hearings are separate and distinct. *See Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 9, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979) ("The fallacy in respondents' position is that parole *release* and parole *revocation* are quite different."). Thus, the in-person hearing Cashaw received at his parole revocation would not satisfy his due process right to a hearing regarding deprivation of good-time credit.

■ In addition, the administrative minimum term review apparently was held without notice of the Board's intent to also make a parolability determination, and hence a determination potentially affecting good-time credit, at that review. An essential ingredient of due process is notice. "Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff v. McDonnell*, 418 U.S. at 564. Here, Cashaw never had a realistic opportunity to respond to charges that he was not parolable at the administrative review conducted on January 25. Accordingly, Cashaw did not receive all of the process due him.

The petition is granted and the matter is remanded to the Board for further proceedings consistent with this opinion.

WEBSTER, A.C.J., and PEKELIS, J., concur.

After modification, further reconsideration denied November 13, 1992.

Discretionary review granted March 3, 1993; affirmed at 123 Wn.2d 138 (1994).