Millard L. SWENSON, Plaintiff–
Appellant,

v.

Myrna TRICKEY; Larry Trickey;
Captain Fred Arflack,
Defendants–Appellees.

No. 92–2451.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1993.

Decided June 7, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 17, 1993.

Margaret Price Zoole, Kirkwood, MO, argued, for appellant.

Tamara M. Medler, St. Louis, MO, argued, for appellee.

Before LOKEN, Circuit Judge, HANSEN, Circuit Judge, and VAN SICKLE,* Senior District Judge.

LOKEN, Circuit Judge.

In this 42 U.S.C. § 1983 action, Millard L. Swenson, a Missouri inmate serving a 620–year sentence, alleges that prison officials violated his due process rights when they placed him in administrative segregation for fifteen days without a hearing. Swenson appeals the district court's[1] judgment dismissing his complaint on qualified immunity grounds. We affirm.

## I.

On February 8, 1986, after serving eleven years of his sentence, Swenson was transferred from another Missouri prison to the Missouri Eastern Correctional Center ("MECC") and immediately placed in administrative segregation. He was released into the MECC general population fifteen days later. In September 1990, Swenson commenced this action, alleging that defendants Myrna Trickey, Larry Trickey, and Captain Fred Arflack violated his due process rights by administratively segregating him "without any reason or explanation" and without affording the hearing mandated by Mo.Rev. Stat. § 217.375.2 (1986).

Defendants moved for summary judgment, attaching an affidavit by the prison's Litigation Coordinator stating that she "can find no documentation regarding why Swenson was considered a security risk and placed in Administrative Segregation in February, 1986." Defendants therefore conceded, for summary judgment purposes, Swenson's allegation that he received no hearing while confined in administrative segregation, but argued that they are entitled to qualified immunity because it was not clearly established in 1986 that Missouri law granted Swenson a liberty interest in remaining in the prison's general population.

The district court granted defendants' qualified immunity motion, relying upon our decision in *Brown v. Frey,* 889 F.2d 159 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990). Swenson timely appealed. After he had briefed the issues pro se, we appointed counsel, and additional briefs were exchanged. We have considered Swenson's pro se briefs as well as appointed counsel's briefs and oral argument.

## II.

Qualified immunity shields government officials performing discretionary functions from damage liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This is an objective standard. Its application to a particular defendant's conduct "is a question of law that 'ordinarily should be decided by the court long before trial.'" *Bartlett v. Fisher,* 972 F.2d 911, 914 (8th Cir.1992), quoting *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). A right is "clearly established" for qualified immunity purposes if

> [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is

---

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. The HONORABLE WILLIAM L. HUNGATE, Senior United States District Judge for the Eastern District of Missouri, now retired.

to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Swenson claims a due process right to a hearing in connection with his placement in administrative segregation. There are two critical elements to this claim—whether Swenson's interest in avoiding administrative segregation was protected by the Due Process Clause, and whether he received the process that was constitutionally due. *See Sanders v. Woodruff*, 908 F.2d 310, 312 (8th Cir.), *cert. denied*, 498 U.S. 987, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990). We conclude that defendants are entitled to qualified immunity because neither of these issues was clearly established in February 1986.

### A. Did Swenson Have a Liberty Interest?

■ The Due Process Clause does not itself "create[ ] an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters." *Hewitt v. Helms*, 459 U.S. 460, 466–67, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). However, state law may create a liberty interest "by placing substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). A liberty interest is created if state law contains "substantive predicates" to the exercise of discretion and "specific directives to the decision-maker that if the regulations' substantive predicates are present, a particular outcome must follow." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). Procedural guidelines, such as a mandatory hearing, are not enough to create a liberty interest; state law must contain "explicitly mandatory language in connection with requiring specific substantive predicates." *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871.

■ Swenson's assertion of a protected liberty interest is based solely upon § 217.-375.2, which in February 1986 provided:

> When it is determined by the chief administrative officer of an institution that an inmate is an immediate security risk, or an inmate is violent, struggling and creating sufficient disturbance to indicate he is not in control of himself, or an inmate is physically violent, or an inmate is in urgent need to be separated from others for his own safety or that of others, the chief administrative officer of the institution may transfer the inmate to an administrative segregation unit which shall be situated so that the segregation of such inmates from the other inmates of the institution shall be in all respects complete. A hearing shall be held concerning the incident within seventy-two hours.

There is an obvious problem with Swenson's reliance upon this statute—by its plain language, it governs a prison official's decision to "transfer" an inmate to administrative segregation after an "incident," not to the process by which a new inmate is initially classified and placed within the prison's overall security system. In 1986, an inmate's initial classification was the subject of a number of other statutes, none of which imposed either time or hearing limitations on the process.[2]

The Supreme Court recognized in *Hewitt* that one use of administrative segregation is "to await later classification." 459 U.S. at 468, 103 S.Ct. at 869. The initial classification of inmates clearly impacts prison security and may require flexible time limitations. For example, if one hundred inmates are transferred from a prison where a riot is in progress, the administrator of the prison receiving those inmates surely acts reasonably by segregating them from the prison's own general population while the initial assignment and classification process is completed,

---

**2.** *See* Mo.Rev.Stat. § 217.300 (establishing reception and diagnostic centers responsible for assigning inmates to particular institutions); § 217.330 (assignment and delivery of prisoner to a particular institution by the reception and diagnostic center); § 217.335 (each institution shall have classification teams to make recommendations regarding classification and assignments); § 217.340 (chief administrative officer "shall classify the inmate by his job, labor, cell or sleeping quarters and level of security required, adhering as closely as possible to the recommendations of the classification team").

even if that process is unusually lengthy. Section 217.375.2 does not deal with either the substantive or procedural issues relevant to initial classifications, and *Thompson* teaches that a liberty interest is created only by "substantive predicates" governing deprivation "of the particular interest in question." 490 U.S. at 464 n. 4, 109 S.Ct. at 1911 n. 4. Therefore, we cannot accept Swenson's unsupported assertion that § 217.375.2 governed his initial placement in administrative segregation when he arrived at MECC in February 1986, an issue we did not decide in *Brown–El v. Delo*, 969 F.2d 644 (8th Cir. 1992).

Of course, Swenson could have undertaken to prove as a factual matter that, in 1986, MECC by regulation or established practice treated this statute as applying to his initial placement in administrative segregation. But he did not do so. In these circumstances, it is not clearly established that Swenson had a protected state-created liberty interest in avoiding administrative segregation in February 1986. Thus, qualified immunity bars his claim.

### B. What Process Was Due?

■ Even if § 217.375.2 created a clearly established liberty interest in Swenson's placement in administrative segregation, he must prove that he was not afforded the minimum requirements of due process. Swenson first argues that the statutorily mandated hearing within seventy-two hours is constitutionally required. We squarely rejected that argument in *Brown v. Frey*, 889 F.2d at 166. Swenson may not base his § 1983 claim on a violation of the state statute, *see, e.g., Glick v. Walker*, 834 F.2d 709, 711 (8th Cir.1987), and "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *see Johnson v. Boreani*, 946 F.2d 67, 72 (8th Cir.1991).

■ Swenson next argues that he was denied a hearing within a reasonable time after being placed in administrative segregation. This is the constitutionally appropriate standard. *See Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871 (prison officials are "obligated to engage only in an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation"). However, the question is whether it was clearly established in 1986 that a constitutionally reasonable time is less than fifteen days.

In *Hayes v. Lockhart*, 754 F.2d 281, 283 (8th Cir.1985), we held that an Arkansas inmate "received adequate due process protection" when he was afforded a hearing fifteen days after his initial placement in administrative segregation. In *Brown v. Frey*, which also involved a fifteen-day delay, we held that qualified immunity barred a Missouri inmate's claim of a right to a hearing in three days. 889 F.2d at 166. Here, Swenson was released to the general prison population within fifteen days. Given these cases, and the absence of any proof of bad faith or improper motive or unreasonable delay, we agree with the district court that it was not clearly established in 1986 that release after fifteen days without a hearing was constitutionally unreasonable. Therefore, defendants are entitled to qualified immunity.

■ Finally, Swenson argues that qualified immunity is not available to defendants because of the ministerial nature of the § 217.375.2 hearing requirement. However, as the Supreme Court has expressly held, breach of a ministerial state law duty "would forfeit official immunity only if that breach itself gave rise to [plaintiff's § 1983] cause of action for damages." *Davis*, 468 U.S. at 196 n. 14, 104 S.Ct. at 3020 n. 14. Here, breach of the state law seventy-two-hour hearing requirement did not violate Swenson's due process rights.

The judgment of the district court is affirmed. Defendants' motion to supplement the record on appeal is denied.