[No. 59959-9. En Banc. January 27, 1994.]

*In the Matter of the Personal Restraint of*
CHARLES CASHAW, *Respondent.*

*Christine O. Gregoire, Attorney General,* and *Thornton Wilson, Assistant,* for petitioner.

*Lana C. Glenn,* for respondent.

MADSEN J. — Charles Cashaw filed a personal restraint petition (PRP) challenging the actions of the Indeterminate Sentence Review Board (Board) in setting his minimum prison term to coincide with the remainder of his court-imposed maximum sentence. The Court of Appeals found the case to be moot but proceeded to address the merits in light of the important issues involved. The court granted the PRP after concluding the Board's failure to follow its own procedural rules violated Cashaw's due process rights.

Although we too reach the merits of the case, we find that no due process liberty interest was created here, for the Board's regulations imposed only procedural, not substantive, requirements. Nevertheless, even though Cashaw cannot establish a constitutional violation, pursuant to *In re Locklear,* 118 Wn.2d 409, 823 P.2d 1078 (1992), an inmate may be entitled to relief solely upon showing the Board set a minimum term in violation of a statute or regulation. Cashaw has shown that such a violation occurred in his case. Accordingly, we affirm the Court of Appeals' decision granting Cashaw's personal restraint petition.

## FACTS

Charles Cashaw has a lengthy criminal history, with felonies dating back to the mid-1960's. Response of the Indeterminate Sentence Review Board exhibit 5. The incarceration currently at issue began in the mid-1970's when Cashaw was convicted of three counts of second degree burglary and one count of grand larceny under a number of different causes of action. Response of the Indeterminate Sentence Review Board exhibits 1-3. By the mid-1980's, Cashaw had been paroled six times under these causes of action, but each time he violated the terms of his parole release. Response of the Indeterminate Sentence Review Board exhibit 5.

In June 1987, once again, Cashaw was released on parole. Response of the Indeterminate Sentence Review Board exhibit 4, at 1. Once again, he was charged with violating the conditions of his parole. These charges were addressed in a parole revocation hearing held before a member of the Board in August 1989. Cashaw attended this hearing. After taking testimony, the Board member found Cashaw guilty of violating two conditions of parole. The Board member revoked Cashaw's parole and returned him to prison. Response of the Indeterminate Sentence Review Board exhibit 4.

In January 1990, the Board met to consider Cashaw's new minimum term. Cashaw did not attend this meeting. The Board's decision was as follows:

> The new minimum term is to extend to the maximum expiration date. Release on the maximum expiration date which is currently 1/23/92. Upon request of the Department of Corrections, the Board will review parolability prior to the maximum expiration date if the Department of Corrections presents evidence of any changes in the inmate's prospects for rehabilitation.

Response of the Indeterminate Sentence Review Board exhibit 5.

The Board gave the following reasons in support of its decision:

> Mr. Cashaw has a long criminal history extending some 26 years. He has experienced 6 prior paroles without success. He has clearly demonstrated a lack of rehabilitation by continuing to violate the conditions of his parole and the law. His behavior and actions clearly represent an ongoing threat to people's property, and he continues to demonstrate that he does not intend to cooperate with authorities or cease his unlawful behavior. For these reasons, it would be in the best interest of the citizens of the state of Washington that he be incarcerated as long as the law allows and that he not be released from custody prior to the expiration of his actual maximum expiration date.

Response of the Indeterminate Sentence Review Board exhibit 5.

On May 28, 1991, Cashaw filed a PRP in the Court of Appeals. Cashaw argued that the Board's decision to set his

new minimum term to coincide with the maximum term violated his right to procedural due process.

The Court of Appeals granted the PRP concluding that the Board denied Cashaw due process when it failed to give him notice and an in-person hearing prior to setting his minimum term at the maximum term. The court reasoned that the Board's reliance on Cashaw's lack of rehabilitation transformed the hearing, at least in part, into a hearing on parolability. For such parolability decisions, the Board's own regulations require prehearing written notice of specific information and an in-person hearing. The court concluded these regulations raise an expectation, cognizable under the due process clause, that the regulations will be followed. Because they were not followed, the court found a violation of due process. *In re Cashaw*, 68 Wn. App. 112, 124, 839 P.2d 332 (1992). We granted the Board's petition for review.

## ANALYSIS

Cashaw's maximum expiration date was January 23, 1992. Because Cashaw's release date had already come and gone, and Cashaw presumably was released, the Court of Appeals concluded the case was moot. Nevertheless, the court proceeded to address the merits because the case involved issues of continuing and substantial public interest. The Board had conceded that the issues were not frivolous and similar claims were pending from other inmates. *Cashaw*, at 115 n.1; *see also In re Myers*, 105 Wn.2d 257, 261, 714 P.2d 303 (1986).

Neither party has challenged these conclusions and neither party has requested us to terminate review based on mootness. We likewise choose to address the merits.

Because Cashaw committed his offenses prior to the effective date of the Sentencing Reform Act of 1981 (SRA), the SRA does not apply. *See* RCW 9.94A.905. Accordingly, his sentence is governed by the indeterminate sentencing provisions of RCW 9.95. *See In re Ayers*, 105 Wn.2d 161, 162, 713 P.2d 88 (1986). Under those provisions, the superior court generally sets a convicted felon's maximum

sentence and the Board sets the minimum sentence. RCW 9.95.010, .040, .052. The Board's minimum sentence cannot exceed, but can equal, the court-imposed maximum sentence. RCW 9.95.040.

An inmate who behaves well in prison may be released on parole prior to serving the full minimum term. This is accomplished through the granting of "time credit reductions", generally referred to as good-time credits, which can be awarded in amounts up to one-third the length of the minimum term. RCW 9.95.070, .110. The good-time credits apply only to the Board's minimum sentence, not to the court's maximum sentence. *See* RCW 9.95.070, .110.

An inmate is not automatically released upon serving the minimum sentence, less good-time credits. The Board cannot release an inmate, regardless of the status of the minimum term, until either the Board determines the inmate has been rehabilitated (and is otherwise fit for release) or the maximum sentence has been served. RCW 9.95.100. If the Board determines the inmate is not rehabilitated, it redetermines the inmate's minimum term, staying within the bounds of the maximum term. RCW 9.95.052, .100. Accordingly, the minimum term carries with it no guaranty of release; it only establishes a date when the inmate becomes eligible to be *considered* for parole. *See* WAC 381-40-100; *In re Powell*, 117 Wn.2d 175, 186 n.1, 814 P.2d 635 (1991).

██ The Court of Appeals found that the Board's actions in this case deprived Cashaw of due process protections. Due process protects against the deprivation of life, liberty or property. U.S. Const. amend. 14, § 1.[1] The threshold question in any due process challenge is whether the challenger has been deprived of a protected interest in life, liberty or property. *See In re J.H.*, 117 Wn.2d 460, 472-73, 815 P.2d 1380 (1991). In the present case, the question is whether Cashaw has established a liberty interest.

---

[1]The parties have not argued in this case that the state constitution provides any greater protection than does the federal constitution. Accordingly, we do not reach the state constitution.

 Liberty interests may arise from either of two sources, the due process clause and state laws. *Hewitt v. Helms*, 459 U.S. 460, 466, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983); *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987). The due process clause of the federal constitution does not, of its own force, create a liberty interest under the facts of this case for it is well settled that an inmate does not have a liberty interest in being released prior to serving the full maximum sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979); *Ayers*, 105 Wn.2d at 164-66; *Powell*, 117 Wn.2d at 202-03.

However, as indicated above, state statutes or regulations can create due process liberty interests where none would have otherwise existed. *See Hewitt*, 459 U.S. at 469; *Toussaint*, 801 F.2d at 1089; *Powell*, 117 Wn.2d at 202-03. By enacting a law that places substantive limits on official decisionmaking, the State can create an expectation that the law will be followed, and this expectation can rise to the level of a protected liberty interest. *See Toussaint*, 801 F.2d at 1094.

For a state law to create a liberty interest, it must contain "substantive predicates" to the exercise of discretion and "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow". *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989); *Swenson v. Trickey*, 995 F.2d 132, 134 (8th Cir.), *cert. denied*, 62 U.S.L.W. 3376 (U.S. Nov. 29, 1993). Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot.

The Court of Appeals found a liberty interest was created here by certain procedural regulations for parolability hearings. The court's reasoning was as follows: the Board's setting of Cashaw's minimum term to coincide with his maximum term was essentially a decision on Cashaw's parol-

ability; the Court of Appeals then noted that the Board's own rules (WAC 381-60-070 and -120) call for an in-person parolability hearing and detailed written notice as to the substance and procedures involved in that hearing; finally, the court held that these rules created for inmates a liberty interest, such that a failure to follow these procedures violates due process. *Cashaw*, 68 Wn. App. at 118-23. It is only the last step in the court's reasoning, the conclusion that the Board's procedural regulations can create a liberty interest, that is in question here.

The United States Supreme Court and the Ninth Circuit have clearly held that procedural laws do not create liberty interests; only substantive laws can create these interests. *Olim v. Wakinekona*, 461 U.S. 238, 250, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983); *Hewitt v. Helms*, 459 U.S. at 471-72; *Toussaint*, 801 F.2d at 1098; *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). The Supreme Court's reasoning for this limitation is that:

> "[A] liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality." Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

(Footnotes and citations omitted.) *Olim*, 461 U.S. at 250-51 (quoting *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982)). For these reasons, state regulations that establish only the procedures for official decisionmaking, such as those creating a particular type of hearing, do not by themselves create liberty interests.[2] *See Olim*, 461 U.S. at 250-51.

---

[2]We clarify potentially ambiguous language on this point from an earlier opinion. In *In re Ayers*, 105 Wn.2d 161, 713 P.2d 88 (1986) this court denied a PRP, but remanded for procedural corrections because the Board had failed to follow its own procedural regulation requiring certain decisions to contain written findings and conclusions. *Ayers*, at 163, 168. In discussing this issue, the court did not expressly hold that the Board's failure to follow its own procedural

The Court of Appeals noted the procedural nature of the regulations here at issue, yet concluded these regulations could still trigger a liberty interest. The court reasoned that an inmate's reliance on the procedural regulation was justified because the Board's procedural regulations play a more important role in sentencing decisions than they did prior to the adoption of the SRA. *Cashaw*, 68 Wn. App. at 121-22. The court then observed that while prior to the SRA the Board's discretion was "virtually unfettered", *Cashaw*, at 121-22, the Board now must attempt to make decisions "reasonably consistent" with SRA ranges, standards and purposes, RCW 9.95.009(2).

█ While the Court of Appeals certainly is correct in stating that the Board's discretion has been reduced since the adoption of the SRA, the additional directive does not support the creation of a liberty interest. "The adoption of guidelines to structure the exercise of discretion does not necessarily create a liberty interest". *Toussaint*, 801 F.2d at 1094. The bottom line is whether the state law contains "substantive predicates" to the exercise of discretion and "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow". *Thompson*, 490 U.S. at 463; *Swenson*, 995 F.2d at 134.

Decisions as to an inmate's parolability are not guided by "substantive predicates" and "specific directives" from which "a particular outcome must follow". Rather, these decisions concern the degree to which an inmate has become rehabilitated, and thus involve "subjective appraisals" and "discretionary assessment of a multiplicity of imponderables". *Ayers*, 105 Wn.2d at 165-66 (quoting *Greenholtz*, 442 U.S. at 10), part of which was quoting Kadish, *The Advocate and the Expert — Counsel in the Peno-Correctional Process*, 45 Minn. L. Rev. 803, 813 (1960-1961)). For parole decisions,

---

regulation violated any due process interests. Rather, the court was merely holding that the Board must follow its own regulations, a holding that was implicitly reaffirmed in *In re Locklear*, 118 Wn.2d 409, 823 P.2d 1078 (1992). We discuss *Locklear* in greater length below.

"there is no set of facts which, if shown, mandate a decision favorable to the individual". *Ayers*, 105 Wn.2d at 165 (quoting *Greenholtz*, 442 U.S. at 10).

Even after the adoption of the SRA, the Board may still consider rehabilitation in evaluating a pre-SRA inmate. *See Locklear*, 118 Wn.2d at 412-15. "[The Board] has the discretion to consider the rehabilitative aims of the indeterminate sentencing system when it makes discretionary decisions." *Locklear*, at 414; *see also Powell*, 117 Wn.2d at 196.

Thus, passage of the SRA does not in any significant way channel the Board's discretion in determining rehabilitation. This determination cannot be reduced to a simple equation under which predictable outcomes flow from specific factual predicates. Accordingly, the Board's regulations as to the procedures to be followed in reaching this decision, even if important, do not create a liberty interest. There can be no protected expectation of parole under these circumstances.

In light of the foregoing analysis, we reject the reasoning of the Court of Appeals. Nevertheless, under a different theory, we agree that Cashaw's PRP has merit and should be granted.[3] The Court of Appeals was correct in concluding the Board had violated its own procedural rules for parolability hearings when it set Cashaw's minimum term to expire on his maximum expiration date.[4] Where the Court of Appeals erred was in taking the additional step of concluding this violation was of constitutional magnitude. In fact, this additional step is entirely unnecessary in determining whether relief can be granted. Regardless of any due process implications, an inmate filing a PRP may be entitled to relief merely by showing that the Board failed to follow its own procedural

---

[3]Because our resolution of the case in the following section involves a nonconstitutional analysis, we do not address the parties's remaining constitutional arguments. *See, e.g., State v. Zakel*, 119 Wn.2d 563, 567, 834 P.2d 1046 (1992) (constitutional issues are not decided unless they are "absolutely necessary for the determination of a case").

[4]Indeed, the Board has not challenged this conclusion on review in this court.

regulations in setting a minimum term. *See Locklear*, at 419-21.

■■ In *Locklear*, the court granted relief to a personal restraint petitioner upon a simple showing that the Board had failed to follow its own rule requiring the Board to consider certain factors before imposing a minimum term. *Locklear*, at 419-20. The inmate did not have to show a constitutional violation in order to obtain relief. Under RAP 16.4, a personal restraint petitioner may obtain relief by showing *either* a constitutional violation or a violation of the laws of the State of Washington. RAP 16.4(c)(2), (6).

Moreover, *Locklear* did not require any showing as to the court-imposed threshold requirements that generally apply to PRP's. *See In re Hews*, 99 Wn.2d 80, 86, 660 P.2d 263 (1983); *In re Hagler*, 97 Wn.2d 818, 825-26, 650 P.2d 1103 (1982). The threshold requirements have been recently stated as follows: A PRP alleging a constitutional error must show "actual and substantial prejudice", while a PRP alleging nonconstitutional error must show "a fundamental defect which inherently results in a complete miscarriage of justice". *See In re Cook*, 114 Wn.2d 802, 810, 812, 792 P.2d 506 (1990).

We did not fully explain in *Locklear* why these threshold requirements do not apply to a PRP challenging the Board's failure to follow its own procedures. We do so now.

The policies behind the threshold requirements are that "collateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders." *Cook*, 114 Wn.2d at 809 (quoting *Hews*, 99 Wn.2d at 86). Of greatest significance is the policy in granting finality to decisions that the inmate had a previous opportunity to challenge. *See Cook*, 114 Wn.2d at 809-12 (repeatedly referring to the interest in finality). None of these policies justifies imposition of the threshold requirements when the challenge is to a decision, such as the setting of minimum

terms, from which the inmate generally has had no previous or alternative avenue for obtaining state judicial review.[5]

For these reasons, we hold that a PRP challenging a Board decision on a minimum sentence need not meet the threshold requirements addressed in *Cook*. This holding is consistent not only with *Locklear*, but also with other recent cases in which we have not discussed threshold requirements when analyzing PRP's challenging Board decisions relating to minimum terms. *See, e.g., In re Eckmann*, 117 Wn.2d 678, 818 P.2d 1350 (1991); *In re Borders*, 114 Wn.2d 171, 786 P.2d 789 (1990); *In re Irwin*, 110 Wn.2d 175, 751 P.2d 289 (1988); *In re Benninghoven*, 110 Wn.2d 86, 749 P.2d 1302 (1988). To the extent that any of our cases indicate to the contrary, they do so only in dictum, as they cite but do not apply the threshold standards. *See Powell*, 117 Wn.2d at 184; *In re Holmes*, 121 Wn.2d 327, 330, 849 P.2d 1221 (1993); *In re Whitesel*, 111 Wn.2d 621, 633, 763 P.2d 199 (1988).

Accordingly, we evaluate Cashaw's PRP by examining only the requirements of RAP 16.4. Under that rule, petitioners must show they have been restrained under the provisions of RAP 16.4(b) and that the restraint is unlawful under the provisions of RAP 16.4(c). RAP 16.4(a). Here, Cashaw was restrained by the joint operation of the Superior Court's sentence and the Board's minimum term. Moreover, his restraint was unlawful because it was accomplished in violation of the Board's regulations. *See* RAP 16.4(c)(2), (6).[6] Cashaw thus has made the showing required by RAP 16.4.

---

[5]Of course, if an inmate has had a previous opportunity at judicial review, such as through the filing of a previous PRP, a different result might well be merited. *See also* RCW 10.73.140 (placing additional limitations on the filing of subsequent PRP's).

[6]The Board's administrative regulations qualify as "laws of the State of Washington" as that term is used in RAP 16.4(c)(2), (6). General references to "laws of this State" or "laws of the State of Washington" not only include within their scope Washington's statutes, but generally also reach administrative regulations. *See Inman v. Sandvig*, 170 Wash. 112, 118, 15 P.2d 696 (1932) (general references to "law" in the state constitution apply not only to statutes, but also to administrative regulations); *Home Owner's Loan Corp. v. Rawson*, 196 Wash. 548, 559-60, 83 P.2d 765 (1938) ("Congress may authorize an administrative officer or body to make rules and regulations respecting the administration of the law; and such rules, when so made, have the force of law."); *see also State ex rel. Ralston v. Department of Licen-*

As in *Locklear*, the proper relief under these circumstances would be a remand to allow the Board to conduct another hearing, this time using the proper procedures. In the present case, however, Cashaw has already finished serving his maximum sentence and his case is moot. Therefore, our opinion in this case will serve only to reemphasize that the Board must comply with its own regulations for conducting parolability hearings whenever it relies on an inmate's lack of rehabilitation in setting a minimum term to coincide with the inmate's maximum term.

We also comment on one other aspect of the Board's handling of Cashaw's case. The Board has taken the position on appeal that Cashaw continued to earn good-time credits after his minimum term was set at the maximum term. This appears appropriate, for no statute or regulation provides to the contrary. As a result, however, Cashaw should have been given one more parolability hearing prior to the expiration of the maximum term, assuming he earned available good-time credits. This is because an inmate becomes eligible to be considered for parole once the minimum term (less good-time credits) has been served. The Board, instead, ordered that Cashaw was to remain in prison until the expiration of his maximum term, and that Cashaw would not be entitled to another parolability hearing unless one was requested by the Department of Corrections. This practice fails to give effect to good-time credits in violation of RCW 9.95.070 and should not continue.

At oral argument, the Board's attorney asserted that requiring an additional parolability hearing would in effect

---

*ses*, 60 Wn.2d 535, 542, 374 P.2d 571 (1962) (the general phrase includes law in its "generic sense", which includes all sources of law, not just statutes). Because administrative rules and regulations are adopted through delegated legislative powers to make law, they are given the force and effect of laws. 1 Am. Jur. 2d *Administrative Law* §§ 92-93, 126 (1962).

require an infinite number of hearings for each inmate in Cashaw's position. To the extent that this argument is valid, a point upon which we have some doubt, the Board has the power to address the problem through adopting new regulations or, if necessary, through seeking statutory amendments.

We affirm the Court of Appeal's decision granting Cashaw's personal restraint petition.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY and JOHNSON, JJ., concur.