**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT OF: | ) ) ) | No. 80895-8-I |
| | ) | DIVISION ONE |
| TIMOTHY PAULEY, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |

MANN, C.J. — Timothy Pauley filed this personal restraint petition (PRP) following a 2019 parolability hearing under RCW 9.95.100. Pauley argues that the Indeterminate Sentence Review Board (ISRB) abused its discretion when considering his evidence of rehabilitation and risk of re-offense, erroneously used the ".100 hearing" to extend his minimum term, exceeded its authority when setting his minimum term, and violated constitutional due process and the appearance of fairness doctrine. We disagree and deny the personal restraint petition.

I. BACKGROUND

In 1980, Pauley and his accomplice Scott Smith robbed a tavern. Pauley shot and killed two male employees. One woman died after Smith bound her by the neck and tied her to a post.

Citations and pin cites are based on the Westlaw online version of the cited material.

A. Original Sentence

Pauley pleaded guilty to three counts of first degree murder: counts III, IV, and V. He was sentenced to three maximum life terms. The trial court ordered the sentence for count IV to run first, then afterwards counts III and V would run concurrently with one another.

In 1992, the ISRB revised Pauley's sentences to make them more consistent with the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. The ISRB set a minimum term of 400 months on count III, 320 months on count IV, and 311 months on count V. Consistent with his original sentence, Pauley was to serve count IV's term first, followed by count III and V's concurrent terms.[1]

In December 2003, the ISRB paroled Pauley on count IV. He then began serving the concurrent sentences of counts III (400 months) and V (311 months).

B. 2015 Minimum Sentence Reduction

In May 2015, during a minimum term redetermination hearing, the ISRB reduced Pauley's minimum term on count III by 60 months, to 340 months. In doing so, the ISRB cited Pauley's "concerted and continuous efforts to continue his education, learn vocational skills, and to help others within his environment in his over 34 years of confinement" as the reason for this exercise of discretion. At this time Pauley had served approximately 409 months in prison, including 188 months of the ongoing concurrent sentences for counts III and V.

---

[1] The ISRB noted that if the SRA had been in effect when Pauley committed his offenses, the three counts would have all run consecutively and thereby resulted in a total of 942 months of incarceration at the high end of Pauley's sentencing range.

The ISRB recommended scheduling a .100 hearing as soon as possible to determine Pauley's eligibility for a mutual reentry plan.

C. 2016 Parolability Decision

Prior to Pauley's .100 hearing, the Seattle Times published an article regarding the possibility of his early release. King County Prosecutor Daniel Satterberg wrote Governor Jay Inslee and strongly objected to a reduction of Pauley's term. Satterberg claimed that Pauley's three sentences were required to run consecutively under the SRA, resulting in a standard range sentence of 792 to 1056 months. Satterberg requested that the Governor revoke the ISRB's 2015 decision.

The ISRB postponed Pauley's .100 hearing for additional analysis of sentencing structure and other issues. The analysis included an expert review of the scoring and reduction of Pauley's sentence as a result of the 2015 hearing. Professor David Boerner of the Seattle University School of Law conducted the review. Professor Boerner concluded that Pauley's three convictions fell within the range of 720 to 960 months, and noted that the ISRB had the discretion to set exceptional minimum terms outside of the range if it provided adequate written reasons.

Also prior to Pauley's .100 hearing, the Washington Senate Law and Justice Committee (Committee) met to discuss a perceived lack of transparency involving ISRB procedures. The meeting cited Pauley's case as a prime example of the subject. During the meeting, former United States Congressman David Reichert (who had assisted in the investigation of Pauley's case as a homicide detective), Satterberg, and family members of Pauley's victims spoke about the case and criticized the ISRB. Congressman Reichert expressed disbelief that the ISRB could release Pauley, and

mentioned he had contacted Governor Inslee to express his concern. Neither Pauley nor his counsel were informed of this Senate hearing despite the Committee's examination of Pauley's case.

The ISRB also conducted a meeting for concerned citizens, hearing from Satterberg, former Congressman Reichert, the families of Pauley's victims, and former King County Sheriff John Urquhart. The meeting included a discussion of the SRA's mandatory minimum sentences compared to Pauley's "impossibly low sentence." The ISRB provided Pauley with a summary of the meeting.

In January 2016, the ISRB held a .100 hearing for Pauley. Pauley recounted his role in the robbery and murders. He could not explain his actions to the ISRB members, repeatedly telling them that he "panicked" and shot two of the victims. In March 2016, the ISRB decided that Pauley was not parolable. The ISRB concluded that an aggregate minimum sentence of less than 720 to 960 months was unfairly lenient for a pre-SRA defendant convicted of three counts of first degree murder. The ISRB noted that it was required to consider that the SRA mandated consecutive sentences for first degree murder convictions. As a result, the ISRB increased Pauley's minimum term to 900 months, consistent with the higher end of the sentencing range that Pauley would have faced under the SRA.[2]

In addition, the ISRB noted that Pauley's role in the murders was "egregious," and that he could only say that he "panicked" and shot his victims even though they

---

[2] The ISRB increased Pauley's minimum term to 580 months on both remaining counts by adding 240 months to count III (previously 340 months) and 269 months to count V (previously 311 months). These 509 additional months continued to run concurrently. Under the revised sentence, Pauley's combined minimum terms for the previously served count and the two concurrent counts was 900 months.

were bound and posed no threat. The ISRB stated that it "recognize[d] Mr. Pauley's efforts toward rehabilitation in programming and behavior. However, in order to be consistent with SRA guidelines and to account for the egregious nature of his crimes these additional terms are appropriate."

Pauley filed a timely PRP.

This court granted Pauley's PRP and reversed in an unpublished opinion. In re Pers. Restraint of Pauley, No. 76489-6-I (Wash. Ct. App. Aug. 14, 2018) (unpublished), http://www.courts.wa.gov/opinions/ pdf/764896.pdf. We explained that the ISRB failed to consider evidence of Pauley's rehabilitation in its decision:

> [I]nstead of analyzing the evidence of Pauley's rehabilitation, the ISRB cited his relatively low minimum term sentence and his role in the murders as the reasons for denying his parole. Neither of these explanations are included in or comparable to the list of adequate reasons to deny parole in WAC 381-60-160. In fact, the ISRB's focus on the egregiousness of Pauley's underlying crimes "conflicts with its statutory responsibility to consider the evidence presented in determining whether a prisoner has established he is rehabilitated."
>
> The ISRB's failure to consider evidence of Pauley's rehabilitation and its reliance on the relatively low sentence and circumstances of the offenses, was an abuse of discretion. We remand to allow the ISRB to conduct a hearing and properly consider the evidence of Pauley's rehabilitation in accordance with its procedures.

Pauley, Slip Op. at 9 (quoting In re Pers. Restraint of Dyer, 157 Wn.2d 358, 368, 139 P.3d 320 (2006) (Dyer I)). As a result of this court's decision, Pauley's sentence reverted back to a minimum term of 340 months on count III and 311 months on count V.

D. 2019 Parolability Decision

On July 17, 2019, the ISRB held another .100 meeting pursuant to this court's order of remand. The ISRB first allowed Pauley's classification counselor, Larry Verlinda, to describe Pauley's extensive programming and rehabilitation history. The ISRB then asked Pauley about his role in the 1980 crimes as well as his prior criminal conduct. Pauley opened his response by discussing a catastrophic industrial accident in February 1980 that led to significant substance abuse, loss of income, his immersion in self-pity, and his purchase of a gun. Pauley explained that he was intoxicated from the moment he woke up in the hospital until he went to jail. He described meeting Smith, who was also on disability, and the night of the crime which came after a night of drinking. Pauley explained that he was stressed, highly agitated, and scared at the time of the crime. He also explained that he was "just following a direction" from Smith. Pauley then described heading back to Smith's place for the night and getting up as soon as it got light to resume drinking.

In response to the ISRB's questions, Pauley identified the risk factors that he believed led to his crimes: anti-social fears, substance abuse, isolation, and posttraumatic stress disorder. The ISRB then inquired into a 2012 letter that Pauley had written to his brother. In the letter, Pauley agreed with statements that younger inmates had made about how all correctional officers needed to be killed. Pauley was asked how the letter related to his participation in the Alternatives to Violence program. He explained that he would not say the things in the letter to members of the program, but that he was very frustrated at the time.

The ISRB next discussed with Pauley the results of his 2019 psychological evaluation, particularly one of the 22 factors where Pauley scored within a range that indicated he had an overly optimistic image of himself that may indicate poor insight into risk factors.

The ISRB then asked Pauley what additional programming in prison he thought he needed to reach the goal of complete rehabilitation and being ready for the community. Pauley replied that he believed he had done everything he needed to be ready. When asked what programming he would need in the community, Pauley replied that he would try to recreate the prison's structured environment on the outside by filling his life with positive activities, such as college and being involved in a church's outreach program. When asked how he would support himself, Pauley discussed possibilities including internet development, computer programming, physical fitness, and student loans. When asked if he had considered making amends, Pauley stated that it would be "insulting" to the victims to try to make amends on what he thought should be done.

Pauley and his counsel, rather than asking for immediate parole, requested the ISRB add 60 months to his minimum terms to allow for completion of a mutual reentry plan or graduated reentry process.

The ISRB found Pauley not parolable for four reasons. First, "Pauley has not sufficiently addressed his substance abuse issue, one of his highest risks." Second, his drug use after his early 1990s treatment indicated that "he likely did not internalize the substance abuse treatment programming he received." Third, the 2012 letter condoning violence against correctional staff "calls into question[ ] [his] ability to appropriately respond to stressful situations (problem solving skills), particularly when they do not go

his way (revenge taking and/or homicidal ideations)." Fourth, the fact that Pauley, according to his 2019 psychological evaluation, "significantly downplayed more negative traits about himself or has poor insight into the potential problems/risk factors he presents. This was further supported in the interview where Mr. Pauley was unable to discuss why he engaged in certain behaviors, including the instant offense."

After finding Pauley not parolable, the ISRB added 84 months to count III and 113 months to count V. The result was Pauley's minimum sentence on counts III and V were both changed to 424 months (only 24 months longer than Pauley had requested).[3]

Pauley timely filed this PRP.

## II. ANALYSIS

### A. Review of ISRB Decisions

"A petitioner must show he is under unlawful restraint to succeed on a PRP challenge of an ISRB decision." In re Pers. Restraint of Dyer, 164 Wn.2d 274, 285, 189 P.3d 759 (2008) (Dyer II). "[A]n inmate may be entitled to relief solely upon showing the [ISRB] set a minimum term in violation of a statute or regulation." In re Pers. Restraint of Cashaw, 123 Wn.2d 138, 143, 866 P.2d 8 (1994).

Pauley committed his offenses prior to the effective date of the SRA; therefore, it does not apply. See RCW 9.94A.905. Pauley's sentence is governed by the indeterminate sentencing provisions of chapter 9.95 RCW under which the trial court sets the defendant's maximum sentence and the ISRB establishes the defendant's minimum term and eligibility for parole. See In re Pers. Restraint of Lain, 179 Wn.2d 1,

---

[3] It appears that at the time of the ISRB's 2019 decision, Pauley had served 240 months of the consecutive sentences on counts III and V.

11, 215 P.3d 455 (2013). The ISRB sets the minimum sentence in a "minimum term hearing." RCW 9.95.010, .040, .052. The ISRB's minimum sentence can equal, but not exceed, the court-imposed maximum sentence. RCW 9.95.040. "[T]he minimum term carries with it no guaranty of release; it only establishes a date when the inmate becomes eligible to be considered for parole." Cashaw, 123 Wn.2d at 147.

The ISRB may not grant parole unless it concludes that the inmate is completely rehabilitated and fit for release. RCW 9.95.100. An inmate is "subject entirely to the discretion of the [ISRB], which may parole him now or never." In re Pers. Restraint of Powell, 117 Wn.2d 175, 196, 814 P.2d 635 (1991). The ISRB has the discretion to consider the rehabilitative aims of the indeterminate sentencing system when making this discretionary decision. Cashaw, 123, Wn.2d at 147. If the inmate is not parolable, then the minimum term is necessarily extended. In re Pers. Restraint of Ecklund, 139 Wn.2d 166, 174, 985 P.2d 342 (1999).

The ISRB is required to make its decision based on the evidence presented at the parolability hearing. Dyer I, 157 Wn.2d at 365. This includes evidence of the inmate's rehabilitation. Dyer I, 157 Wn.2d at 368. When making its decision on parolability, the ISRB's decision is guided by a nonexclusive list of adequate reasons for non-parolability. WAC 381-60-160. The reasons include, but are not limited to, an inmate's active refusal to participate in programming, disciplinary infractions during incarceration, continuing intent to engage in illegal activity, stated intentions to reoffend or not comply with parole, or substantial danger to the community. WAC 381-60-160. RCW 9.95.009(2) and (3) require that the ISRB "attempt to make decisions reasonably consistent with [the SRA] ranges, standards, purposes, and recommendations [of the

sentencing judge and prosecuting attorney]" and "give public safety considerations the highest priority when making all discretionary decisions on the remaining indeterminate population regarding the ability for parole, parole release, and conditions of parole."

We review the ISRB's parolability decisions for an abuse of discretion. Dyer I, 157 Wn.2d at 363. We do so to ensure the ISRB "exercises its discretion in accordance with the applicable statutes and rules. The [ISRB] abuses its discretion when it fails to follow its own procedural rules for parolability hearings or acts without consideration of and in disregard of the facts." Dyer I, 157 Wn.2d at 363.

B. Abuse of Discretion

Pauley argues that the ISRB abused its discretion by failing to comply with this court's 2018 opinion and with its own procedures. We disagree.

As set forth above, this court reversed the ISRB's prior 2016 decision as an abuse of discretion because it failed to discuss evidence of Pauley's rehabilitation and instead focused on his relatively low minimum term sentence and the egregiousness of his crime. We determined these factors were not included in, or comparable to, the list of adequate reasons to deny parole and to find Pauley was not rehabilitated.

In contrast, the 2019 ISRB decision focused on Pauley's efforts at rehabilitation. The ISRB first addressed Pauley's efforts to address his risk factor for substance abuse. Pauley took three substance abuse programs in Wyoming in the early 1990s. But after participation, he provided a positive urinalysis in 1995, causing the ISRB to doubt whether Pauley had internalized the treatment. Pauley subsequently participated in a five-session Smart for Recovery educational program in 2017, but agreed it was more educational than treatment. While Pauley attended one meeting of Alcoholics

-10-

Anonymous, he concluded that it "was not something that I felt was beneficial." Based on Pauley's explanations, the ISRB determined that Pauley "has not sufficiently addressed his substance abuse issue, one of his highest risks."

The ISRB next addressed Pauley's efforts to learn to deal with stressful situations and violence. Pauley explained that he had been a facilitator with the Alternatives to Violence program since 1992. Despite his participation in this program, the ISRB was concerned that Pauley wrote a letter to his brother in 2012 (after 20 years in the Alternatives to Violence program) that "was extremely derogatory to DOC staff and referenced the homicides of CCOs for which he 'can't say I would shed a tear' as well as a retributive action against a staff [member] that he felt had treated him unjustly." The ISRB concluded that the "letter calls into question Mr. Pauley's ability to appropriately respond to stressful situations (problem solving skills), particularly when they do not go his way (revenge taking and/or homicidal ideations)."

Finally, the ISRB addressed Pauley's most recent February 2019 psychological evaluation. While the evaluation, which is based on standardized tests, assessed Pauley's risk to reoffend as low to moderate, the ISRB was concerned with Pauley's high score in one particular category, explaining:

> The [ISRB] finds it concerning that in his most recent psychological evaluation, dated February 8, 2019, Mr. Pauley scored higher than 91% of a correctional sample on the positive impression management (PIM) scale, indicating he presented himself in a manner that is defensive and focused on presenting himself in the most positive light. Dr. Robtoy, the assessing Psychologist, opines "Mr. Pauley significantly downplayed more negative traits about himself or has poor insight into the potential problems/risk factors he presents. This was further supported in the interview where Mr. Pauley was unable to discuss why he engaged in certain behaviors, including the instant offense."

In summary, unlike the ISRB's 2016 decision that focused almost solely on Pauley's sentence and the underlying crime, its 2019 decision focused on Pauley's risk factors and his efforts at rehabilitation.

Pauley argues that the ISRB failed to rely on the bases identified in statute or its regulation to deny parole, citing RCW 9.95.009(3), RCW 9.95.100, and WAC 381-60-160. His argument fails. For example, RCW 9.95.009(3) mandates that the ISRB "give public safety considerations the highest priority when making all discretionary decisions." There is no evidence that the ISRB failed to take public safety into account. Indeed, the ISRB was concerned with Pauley's efforts at substance abuse, anger management, and his failure to recognize his negative traits—all factors that support the ISRB's concern for public safety should Pauley be paroled. Similarly, RCW 9.95.100 mandates that the ISRB "shall not, however, until his or her maximum term expires, release a prisoner, <u>unless in its opinion</u> his or her rehabilitation has been <u>complete</u> and he or she is a fit subject for release." (Emphasis added). Again, there is no evidence that the ISRB failed to follow this mandate. The ISRB's stated concerns support a determination that it believed Pauley's rehabilitation was not complete.

Pauley's reliance on WAC 381-60-160 is equally misplaced. While the regulation provides a list of factors for consideration, by its plain language the list is a nonexclusive list of examples that would support a finding of nonparolability. While the deficits identified by the ISRB are not explicitly listed in WAC 381-60-160, they are similarly rehabilitation focused and highly relevant to determining whether Pauley's rehabilitation is complete and whether he is fit for release.

The ISRB properly considered evidence of Pauley's rehabilitation. Under the statutory complete rehabilitation standard, this consideration included weighing evidence of successes in rehabilitation against evidence showing deficits in rehabilitation. The deficits included Pauley's ultimately unrealistic view of himself that prevents him from gaining better insight into his risk factors and seeking out the programming that specifically addresses those risk factors, including substance abuse and problem solving in stressful situations. The ISRB did not abuse its discretion in determining Pauley was not parolable.

C. Extension of Minimum Term

Pauley argues that the ISRB erroneously used his .100 hearing to extend his minimum term. We disagree.

When conducting proceedings under RCW 9.95.100, the ISRB is evaluating parolability through the "very generalized standard authorized by the legislature." Pet. of Ayers, 105 Wn.2d 161, 167, 713 P.2d 88 (1986). "It is self-evident that if the inmate is not parolable or there is not an acceptable plan of parole, then the minimum term is necessarily extended." Ayers, 15 Wn.2d at 167.

Here, the ISRB determined that Pauley was not parolable. As such, the next reasonable step was to extend his minimum term "based on programming recommendations to further his rehabilitation."[4] The ISRB did not erroneously use Pauley's .100 hearing to do so.

_____

[4] We note that Pauley and his attorney recommended the ISRB add 60 months to his minimum term to allow time for him to participate in a mutual reentry plan or graduated reentry process.

-13-

Pauley also argues that by extending his minimum term, the ISRB exceeded its authority on three additional grounds: (1) that RCW 9.95.040 prevents the ISRB from exceeding the maximum term provided by law for the offense of which he was convicted; (2) a life without parole sentence is unconstitutional as applied to Pauley because it paints him as "virtually irredeemable;" and (3) Pauley's age when committing the crime is a mitigating factor.  We disagree.

The maximum term of a pre-SRA offender is his quantum of punishment unless he demonstrates sufficient rehabilitation to be paroled.  RCW 9.95.100.  There is no right to be paroled prior to the expiration of the maximum sentence.  Ayers, 105 Wn.2d at 163.  An offender's minimum term is not a guaranty of parole, merely a time in which he becomes eligible for consideration of parole.  WAC 381-40-100; Powell, 117 Wn.2d at 186 n.1.  Pauley's maximum sentence is life.  RCW 9.95.100 does not presume that he will be released before this sentence expires.  Further, the ISRB has provided Pauley with an extended minimum term in which he would continue to participate in programs furthering his progress.  He is not "virtually irredeemable."[5]

Using the quantum of punishment associated with Pauley's crime, and guided by the relevant authority, the ISRB extended Pauley's minimum term.  In doing so, it did not imply that Pauley had life without parole.  Regardless of Pauley's parolability hearings, he still has a life sentence for his crimes.

---

[5] Pauley cites State v. Ronquillo, 190 Wn. App. 765, 361 P.3d 779 (2015), for the concept of "virtually irredeemable" and "de facto life sentence."  Ronquillo, however, concerned a juvenile with a term-of-years sentence that was extended so long as to have essentially become a life sentence.  Ronquillo, 190 Wn. App. at 775.  Pauley was not a juvenile when convicted and he has actual life sentences.

D. Due Process and the Appearance of Fairness

Pauley also claims the ISRB violated due process and its own rules by permitting an in-person meeting to discuss minimum terms, failing to inform Pauley of a state senate hearing in which his case was discussed, and violating the appearance of fairness doctrine at the 2016 hearing. Pauley acknowledges that the ISRB's 2019 decision does not mention any of these events, but states the historical information tainted the 2019 hearing.

Neither the ISRB nor this court have the ability to change who participated in meetings before or during the 2016 ISRB hearing, nor Pauley's lack of notice prior to the earlier senate hearing. Pauley does not suggest, and there is no evidence in the record before us, that similar meetings or hearings were held prior to the 2019 hearing. Further, the remedy for any error in the 2016 ISRB decision would be a remand for a new hearing. This court already granted Pauley's PRP following the 2016 decision, on different grounds, and remanded for a new hearing without reaching these issues. Claims based on facts that predated the ISRB's 2016 decision are moot. State v. Cruz, 189 Wn.2d 588, 597, 404 P.3d 70 (2017) ("[I]f a court can no longer provide effective relief, then the case is basically moot."). We decline to address issues predating the 2016 decision.[6]

---

[6] Pauley has twice moved to supplement the record on appeal with documents produced under the public records act related to communications prior to the 2016 ISRB hearing. We grant Pauley's motion to supplement, but because the documents produced concern activities prior to the 2016 hearing, issues they might raise are moot.

The petition is denied.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._                    _Verellen J._